ALF HUNTER v. STATE.

No. A-439. Opinion Filed March 4, 1910.

(107 Pac. 444.)

1. **APPEAL—Record—Amendment of Case-Made.** Where a writ of certiorari is asked to complete the record on appeal, by adding thereto the examination of the trial jurors on their **voir dire,** and it appears that the case-made was settled without suggesting this amendment, the application will be denied.

2. **ARRAIGNMENT AND PLEAS—Withdrawal of Plea to Demur.** An application for leave to withdraw a plea for the purpose of filing demurrer is properly denied, where no demurrer is presented, and no defect in the indictment is pointed out.

3. **SAME — Leave to Withdraw Plea — Discretion of Court.** The defendant having entered a plea of not guilty, when the case was called for trial asked leave to withdraw his plea, for the purpose of presenting a motion to set aside the indictment, which motion alleged mere conclusions of law, and was not verified. Held that, where it is plain that substantial justice will not be promoted nor rights of the defendant prejudiced, the application for leave to withdraw the plea should be denied. The application was addressed to the discretion of the trial court, and was properly overruled.

4. **CONTINUANCE—Time to Prepare for Trial.** When the case was called for trial, defendant filed an unverified motion for a continuance, on the sole ground that his counsel had not sufficient time and opportunity to prepare for trial. The offense was committed on June 5, 1908; defendant was arrested 16 months later, was arraigned, plea entered, and the case by consent was set for trial a week later. Held, it is apparent from the nature and character of the case, as shown by the record, that the defendant had ample time to prepare for trial, and that this ground was not sufficient.

5.   **EVIDENCE—Competency—Evidence Showing Guilt of Another Crime.** Evidence, which is relevant to the issue by tending to explain or characterize the act in question on a criminal trial, is not incompetent or inadmissible because it also tends to prove the accused guilty of another crime.

6.   **MURDER—Instructions—Not Based on Evidence.** The court did not err in refusing to give instructions, based upon a theory that there was no evidence to support.

7.   **Murder—Instructions.** The instructions in the case reviewed, and found to be more favorable to the defendant than the law demands.

(Syllabus by the Court.)

*Appeal from District Court, Blaine County; G. A. Brown, Judge.*

Alf Hunter, alias James Kingsbery, was convicted of murder, and appeals. Affirmed.

*Laurence H. Hampton,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., (*E. G. McAdams,* of counsel), for the State.

DOYLE, JUDGE. Plaintiff in error (hereinafter designated the defendant) was on the 20th day of August, 1908, charged by indictment in the district court of Blaine county with the murder of Sheriff G. W. Garrison, in said county on the 5th day of June, 1908. On October 5, 1909, the defendant was duly arraigned, and entered his plea of not guilty. By consent of counsel for state and for defendant the case was set for trial on October 13th. On October 11th the defendant asked leave of court to withdraw his plea heretofore entered, for the purpose of demurring to the indictment, which request was refused. October 11th the defendant filed his motion to set aside the indictment, which was overruled by the court. October 12th defendant filed his motion to set aside or challenge to the panel of petit jurors summoned. Upon hearing the evidence the court overruled the challenge. On the same day the defendant filed his motion for continuance, which was overruled by the court. October 13th the trial began, and on October 16, 1909, the jury returned its verdict, finding the defendant guilty of murder, and fixing his punishment at death.

Motions for new trial and in arrest of judgment, having been filed, were overruled by the court. Exceptions were taken, and the same allowed to all the aforesaid rulings of the court. On said 16th day of October, the same being the last day of the term, the court pronounced judgment in accordance with the verdict, and set the 3d day of December, 1909, as the date of defendant's execution. Defendant prayed an appeal. Thirty days were allowed to make and serve a case-made, 3 days to suggest amendments, the same to be settled and signed upon 3 days' notice by either party; the petition in error with case-made attached to be filed in the Criminal Court of Appeals of Oklahoma within 40 days from the date thereof. Thereupon defendant made application for an order of the court directing the court reporter to furnish a transcript of the evidence at the expense of Blaine county, supported by his affidavit that he was without the means to pay for the same. Whereupon the court ordered that the court reporter furnish defendant with a transcript of the evidence taken on the trial at the expense of Blaine county. November 18, 1909, there was filed in this court petition in error, with case-made attached together with proof of service of notices that defendant appeals. Whereupon an order was made granting a stay of execution, subject to such order or judgment as may be made in said cause by this court. January 26, 1910, on motion of the defendant, he was permitted to file a corrected case-made, containing a transcript of the evidence taken on the trial and other matters omitted in the original case-made. January 28, 1910, defendant filed an application for writ of certiorari, wherein he prays that "an order be made directing that W. R. Le Compte, court reporter, make and transcribe and duly certify the record of the examination of the jurors, which is omitted from the record contained in the case-made and that such further orders be made as may be necessary and proper for the proper settling, signing, and certifying said record of said jury examination to this court." February 7, 1910, said cause was orally argued by Laurence H. Hampton, counsel for defendant, Chas. L. Moore, Asst. Atty. Gen., and E. G. McAdams

of counsel for the state, upon the application for writ of certiorari, and upon the merits.

The application for writ of certiorari is without merit. The burden is imposed upon the county, where a conviction is had, of paying the costs of preparing and transcribing the record for a review of a capital case, without regard to the question whether any errors were committed on the trial or not. Thus, without any expense or burden on his part, the convicted criminal is allowed to secure a delay of many months in the execution of his sentence, and the right thus to create delay and costs is invariably availed of. The order of the trial court was that the defendant be furnished with a transcript of the evidence taken on the trial. No objection has heretofore been made to the sufficiency of this order. The record before us contains a true and correct statement of all the pleadings, motions, orders, evidence, verdict, and judgment had in the case; all without cost or expense to the defendant. This is sufficient for a determination of all questions properly raised. The granting of this application could serve no purpose, except to cause additional delay and needless expense to Blaine county. It will therefore be denied.

On June 5, 1908, about 6 o'clock p. m., G. W. Garrison, sheriff of Oklahoma county, was shot by the defendant, and almost instantly killed. The circumstances attendant on the sad affair are sufficiently stated as follows:

Edward Dewes Oldfield, a justice of the peace in and for Oklahoma county, issued a warrant for the arrest of the defendant, which warrant was based upon the duly verified complaint of M. D. Casey, and approved by the county attorney of Oklahoma county, wherein it was charged that the defendant did, at and within Oklahoma county, on May 21, 1908, kill and murder one Susie Pride. Sheriff Garrison, learning that the defendant was in Blaine county, left Oklahoma City about 10 o'clock p. m. on the day of the homicide to serve said warrant, accompanied by two of his deputies, Tod Warden and M. L. Sanders. They proceeded by train to Watonga, where they were joined by G. A. McArthur, sheriff of Blaine county, and his deputy, M. B. Skeen.

They procured three buggies, and drove to Hitchcock, and from there to the place of a negro named Dobbs, about three miles from Hitchcock, where the defendant and Ed Ellis, another negro, were employed chopping cotton. On the day in question Ellis, who had gone to Oklahoma City on a mission for the defendant, returned on the same train to Watonga with the officers, and remained on the train until it arrived at Ferguson, a station about 10 miles north of Watonga; there he left the train and went across the country four miles to Hitchcock, a station on the Enid branch of the Rock Island Railroad, there meeting the defendant in the post office. Leaving Hitchcock, they returned to Dobbs' place. At this time the officers appeared, driving east on the road toward the lane that led to Dobbs' house, which is about 200 yards in from the road. Seeing the officers, the defendant and Ellis ran south into a small ravine, then turned southwest through a wheat field and into a pasture, going in the direction of another negro's house named Earle, Sheriff Garrison and his posse pursuing them. When they reached the pasture Sheriff Garrison commanded them to halt, whereupon the defendant turned and fired three shots from an automatic pistol at the officers. The firing then became general. The defendant here advised Ellis to give himself up. Ellis turned east, and crawled under a brush heap. The officers coming up, he surrendered. The defendant ran on to Earle's house, where he secured a 44 Winchester rifle, and ammunition. The defendant and Earle had been neighbors in Arkansas. At that time Earle owned this Winchester, and on May 30th the defendant and Ellis stopped overnight with Earle, and while there the defendant asked Earle about and examined this rifle. Thus armed, the defendant continued his flight, and took refuge behind a straw stack in a wheat field on the next farm. In a few minutes he was discovered by the officers, who were now following him on foot. After several shots were exchanged the defendant ran from this straw stack to another, about 75 yards distant. From there he fired with the Winchester some 20 shots, one of which struck the deceased in the neck, severing the jugular vein. Deputy Sheriff Sanders was also wounded.

When Sheriff Garrison fell, the shooting ceased, and defendant escaped. Rewards were offered for his capture, and he was arrested in the state of Arkansas about a year and four months later. Sheriff McArthur testified that, while bringing defendant from Little Rock to Blaine county, defendant said that he recognized that the man in the front buggy on the left side was Sheriff Garrison.

Ex-Governor Thomas B. Ferguson, as a witness, testified that defendant stated to him "that on the day this fight took place and Garrison was killed, he thought they had come after him to take him to Arkansas for a murder he had committed there, and he thought that he would rather fight it out, and die if necessary, rather than go to Arkansas, as he thought he would be mobbed there;" and that he also stated: "When they came across the field in the running fight, that he did not have his rifle; that he believed if he had had his rifle then he would have got more of them, and that he seldom missed when he fired."

The defendant, testifying on his own behalf, stated that on the day of the homicide he chopped cotton until noon, then went to Hitchcock, and there met Ed Ellis, and returned with him to Dobbs', where Ellis got something to eat. That they were going to commence working that day for Washington Earle. That a few minutes after Ellis had eaten dinner they saw some men in buggies coming driving fast, and that he and Ellis ran in a southwest direction through a wheat field. That they ran side by side until they came to a wire fence, and several shots were fired. "That Ellis then said, 'Jim, I believe I will stop,' and, knowing Ellis all his life, and knowing nothing against him, I says to Ellis: 'These people will not do you any harm; you give up. I am going to run for my life; I believe they are after mobbing me.'" That he turned around with his revolver and fired three shots, that the wire fence gave him time to run for his life. That he commenced running in the direction of Earle's place; crossed two more wire fences before reaching Earle's. That, reaching Earle's house, he found no one there. That he looked in behind the door, and there sat the rifle, and he got that. That the

weather was bad, and it was muddy, and he had run about a mile and a quarter to a wheat field That the wheat struck him about the hips. That he walked to the first straw stack and squatied down behind it. That the officers came on up. He further testified:

"I judged they were hunting there for me. Pretty soon they came in the direction I was, and one man sitting on a horse, being very high, could see me behind this straw stack. He says: 'Here he is; we have found him'—and they opened fire, and immediately I returned fire, thinking every second was the last. I did not receive any wound on the first straw stack, but when I went from that first straw stack to another I received the wound through the stomach and side. There was men to the right, and in front of me, and I did not know who any man was that I was shooting at. As I said, it was to live as long as I could, and I had no respect for persons. I had no person picked out that I wanted to kill, but every minute seemed like the last, and I was fighting to live as long as possible—was all I was doing. And after a good many shots were fired, I could not tell whether I had hit anybody or not; the wheat was high. It began to drizzle rain, and I walked out of that field; the sun was not quite down, and then I traveled on."

The defendant stated that he was a fugitive from justice from the state of Arkansas, and also that he shot Susie Pride, a colored woman, with the same automatic pistol on May 21, 1908, in Oklahoma City, because she followed him on the street and said, "I am going to have you executed to death back to Arkansas," and that he knew of Sheriff Garrison well, and voted for him, but did not know him personally. He also stated that he knew Deputy Sheriff Sanders well, but did not recognize him.

Eight or nine eyewitnesses testified that the defendant fired the first shots.

The case has been elaborately briefed and ably argued by counsel on both sides. Numerous rulings have been pointed out and alleged by defendant as errors prejudicial to his substantial rights. His amended petition avers 11 assignments of error. We have examined the case with care, giving that consideration to every question which a death sentence case demands.

First.   Defendant claims that the court erred in overruling his application for leave to withdraw his plea of "not guilty," for the purpose of demurring to the indictment.   The trial court properly overruled this application.   No demurrer was offered in connection with the application.   The indictment is not defective. His plea of not guilty was advisedly entered, and defendant's rights were preserved and passed upon in the court's ruling on the motion in arrest of judgment.

Second.   Defendant claims that the court erred in overruling his motion to set aside the indictment.   This assignment is without merit.   The motion was filed out of time, after plea was entered.   Defendant still had the right, upon a proper application at any time before trial, to apply to the court for leave to withdraw his plea for the purpose of presenting his motion, but that was not done in this case.   The motion to set aside does not conform to the requirements of the statute.   It is alleged, first, that the indictment was not found, indorsed, presented, or filed as prescribed by law, and that the grand jury finding and returning said indictment was not drawn and impaneled as provided by law; second, that said pretended indictment was not found, presented, and returned by the requisite number of jurors necessary under the law to find, return, and present an indictment.   No informalities or irregularities are specifically alleged, except that L. H. Chapman had served two or more terms as jury commissioner, and that J. P. Roetzel was, at the time of his appointment as jury commissioner, a member of the State Board of Agriculture; that they were therefore disqualified to act as jury commissioners.   It is not alleged that the grand jurors, members of the grand jury that returned the indictment, were incompetent, or that the alleged irregularities were to the prejudice of the substantial rights of the defendant.   The facts stated, if true, in a motion to set aside an indictment must present a case, not of technical, or possible, or hypothetical, but of manifest prejudice to the substantial rights of the defendant; and, where it is plain that substantial justice will not be promoted, nor manifest wrong to the defendant prevented, the indictment should not be set aside on

mere technical errors, informalities, or irregularities. The motion here does not even aver that the facts stated were not known to the defendant or his counsel at the time of entering his plea, and no reason is assigned why defendant should have entered his plea without first having availed himself of the right to move to set aside the indictment. The notice to the county attorney was not given as required by statute, and the motion was not properly.verified. The court properly refused to delay the trial of the case by permitting defendant to withdraw his plea for the purpose of presenting the motion to set aside the indictment.

Third. Defendant. complains that the court erred in overruling his challenge to the panel of petit jurors serving at said term of court. This assignment is without a shadow of merit.

Fourth. Defendant complains that the court erred in overruling his challenge to the panel of petit jurors summoned by the sheriff from the body of the county. Evidence was heard in support of this challenge, whereupon the court as we believe correctly overruled the challenge.

Fifth. Defendant complains that the court erred in overruling his motion for a continuance. The record shows that when the case was called for trial, he moved for a continuance, and the only ground stated in the motion was that counsel for defendant did not have sufficient time and opportunity to prepare the case for trial. The motion was not verified. The record shows that the defendant was arrested on or about the 1st of October, 1909, at Pine Bluff, Ark., and was immediately transported to Blaine county, and entered his plea to the indictment, and the cause was set for October 13th by consent of counsel. Here was a period of 16 months from the time the offense was committed, and one week from the time his plea was entered, in which to prepare for trial, and from the nature and character of the case as disclosed by the record it is apparent that he had ample time to prepare for trial.

Sixth. Defendant complains that the court erred in admitting evidence on the part of the prosecution. Under this assignment his counsel contends that the court erred in admitting the

complaint filed in Justice Oldfield's court in Oklahoma county, upon which the warrant issued, and also the admission of the warrant upon which Sheriff Garrison was attempting to arrest the defendant at the time of the homicide. While it is well settled, as a general rule, that in the trial of an indictment for a specific offense evidence tending to prove the commission of other offenses is inadmissible in cases of this kind, however, in order to prove the commission of the offense charged, evidence to show that the officer killed was in possession of a warrant for the arrest of the defendant is admissible, and that such warrant was legally issued, although said proof involved the commission of another crime. It is admissible also to show guilty intent in resisting arrest. The court correctly ruled that the objections thereto were not well taken.

Seventh. Defendant complains that the court erred in refusing and ruling out legal and competent evidence on his part. A careful examination of the record discloses that all legal, competent, and material testimony, offered for or on behalf of the accused, was duly admitted.

Eighth. It is assigned as error that the court erred in giving instructions numbered 2 to 17, inclusive. We have carefully examined the instructions, and it would be profitless to extend this opinion by considering them in detail. The instructions as a whole are commendably fair, and fully and correctly state the law of the case.

Ninth. The refusal of the court to give requested instructions numbered 1, 2, and 3. An examination of those instructions shows that the same were properly refused by the court. The theory of the instructions requested and refused is set forth in a portion of the first instruction, which is in the following language:

"If the officer is acting under a warrant, he must inform the defendant, before attempting the arrest, that he acts under the authority of the warrant, and must also show the warrant, if required.".

Also:

"That the law provides and states when an officer can use force in overcoming resistance offered to an attempted arrest, as follows: 'That if, after notice of intention to arrest the defendant, he either flee or forcibly resist, the officer may then use all necessary means to effect the arrest.'"

This theory is clearly erroneous under any hypothesis based upon the evidence in this case. That the defendant knew the officers, and that he fired the first shots, is beyond controversy.

In the instructions given the court charged the jury as follows:

"(10) Under the law any sheriff in this state holding a warrant for the arrest of a person charged with the offense of murder committed in any county of the state is authorized to go into any county of the state, and there, either alone, or with assistants, execute such warrant by arresting the person named therein. The officer must inform the accused that he is acting under the authority of the warrant commanding his arrest, provided the officer has an opportunity so to do. If, however, when approached by the officer, and before he has an opportunity to so inform the defendant, the defendant flees, and when pursued, and before such information can be given him, he attacks or attempts to kill the officer or his assistants, then the officer will be excused from giving such information to the accused, and may resist the attack made by the accused, and use such force as reasonably appears, under all the circumstances, to be necessary to overcome the force and resistance used by the accused, and to effect his arrest. (Excepted to by defendant.) Given. G. A. Brown, Judge.

"(11) Where a sheriff or peace officer, holding a warrant for the arrest of a person charged with the offense of murder, attempts to execute said warrant in an unlawful or unreasonable manner, and the authority of the officer is not known to the accused, and from the conduct of such officer and his assistants, if any, intended then and there unlawfully to kill or seriously injure him, then the defendant has the right to view such appearances from his standpoint, and to resist any such attack upon him by the officer, or officers, and use necessary force therefor. If, however, a peace officer holding warrant of arrest attempts in a reasonable and lawful manner to execute it, and the accused knows or believes the officer to be such, and knows, or has reason to believe, he is charged with a felony, and that the purpose of the officer is to arrest him for such offense, and with intent to escape

such arrest flees from the officer, and when pursued shoots and kills the officer, he will be guilty of murder. (Excepted to by defendant.) Given. G. A. Brown, Judge.

"(12) The state has introduced certain statements claimed to have been made by the defendant, Alf Hunter, after his arrest, and while he was in custody charged with the offense for which he is being tried, and which statements are relied on in part to establish the defendant's guilt of the offense charged against him, and the court instructs you that confessions made by one charged with an offense must be carefully scrutinized, and received with great caution, yet, when deliberately and voluntarily made, such confessions and statements may be considered as evidence for or against the person making them the same as any other evidence. But if a confession or statement, made by one in custody under circumstances showing that he was induced to make the same by the promise or assurance that it would be to his interest to do so, show that such statement or confession was not freely and voluntarily made, then they cannot be considered as evidence against the person so making them; and in this case, if you do not find the statements made by the defendant while in custody were freely and voluntarily made, then you must disregard such statements as affording any evidence against the defendant. But the mere fact that the confession or statements, if any, made by the defendant were made in answer to questions propounded to him while under arrest will not be sufficient to exclude such answers as evidence, if they were freely and voluntarily made. (Excepted to by defendant.) Given. G. A. Brown, Judge.

"(13) Now, bearing in mind the foregoing definitions, and carefully applying these instructions to the evidence, if you believe beyond a reasonable doubt that James Kingsbery and Alf Hunter named in the indictment is one and the same person, and that about the 25th day of May, 1908, or any time thereafter, and before June 5, 1908, a warrant was issued by Edward Dewes Oldfield, a justice of the peace in and for Oklahoma county, in the state of Oklahoma, on a complaint filed with said justice of the peace charging the defendant as James Kingsbery or as Alf Hunter of the offense of murder committed in said county, and that in said warrant the sheriff of said county was commanded to arrest the defendant on said charge of murder, and you further find that such warrant, or alias thereof, was held by G. W. Garrison, sheriff of said Oklahoma county, on the 5th day of June, 1908, and that said G. W. Garrison, as such sheriff, was in Blaine

county, in said state of Oklahoma, for the purpose of executing said warrant and arresting the defendant by virtue thereof, and that said G. W. Garrison, or he and others assisting him, then and there approached the defendant for the purpose of making said arrest, and that the defendant, before said Garrison had opportunity to inform him (the defendant) that he (the said Garrison) was acting under authority of the said warrant, fled from the said Garrison, and when pursued by Garrison, or by him and others assisting him, the defendant, without any cause therefor, unlawfully shot and killed the said G. W. Garrison, intending thereby to escape arrest by such officer, and you find that such killing was done in Blaine county, in the state of Oklahoma, on the 5th day of June, 1908, then it will be your duty to find the defendant guilty of murder, as charged in the indictment, and so say by your verdict. (Excepted to by defendant.) Given. G. A. Brown, Judge.

"(13a) If, however, you find that G. W. Garrison and others assisting him, on the 5th day of June, 1908, went to the place where the defendant, Alf Hunter was, for the purpose of arresting him, and you find that the defendant at the time did not know said G. W. Garrison, or did not then recognize him, or the persons assisting him as peace officers, and did not know or believe that the said Garrison and others were peace officers and intending to arrest him (the defendant) on the charge of murder, or for some felony, and you further find that from the manner and conduct of the said Garrison and others it then and there reasonably appeared to the defendant that they were making an unlawful attack upon him, and, without any authority of law, intended then and there to kill or inflict upon him some serious bodily injury, and that there was imminent danger of such unlawful intention being executed, as viewed by the defendant from his standpoint, and you find that the defendant shot and killed the said Garrison to avoid such threatened or imminent danger to him (the defendant), then you must acquit the defendant, and say by your verdict 'not guilty.' (Excepted to by defendant.) G. A. Brown, Judge."

"(17) The defendant in a criminal case is not required by law to prove his innocence, but the burden is on the state to prove his guilt of the offense charged against him. He is presumed to be innocent of such charge until his guilt thereof is established by legal evidence beyond a reasonable doubt; and, in case the jury

3 Cr.—35

have a reasonable doubt of the defendant's guilt, they must acquit him, and return a verdict of not guilty."

Error, if any, in the instructions given is clearly in favor of the defendant. The presumption of law is that the officer did nothing more than was necessary to the performance of his duty, and in case of doubt this presumption must be resolved in favor of the action of the officer.

The tenth and eleventh assignments relate to the overruling of motions for new trial and in arrest of judgment. The questions therein raised have been fully considered.

The defendant was ably defended. It is commendable that counsel for the condemned in a capital case should raise every question which in his judgment might tend to the advantage of his client; however, the record discloses the most painstaking care on the part of the learned trial court to safeguard every substantial right of the defendant. For this reason the assignments of error are destitute of merit. Thrice a murderer, self-confessed, as a fugitive from justice from a neighbor state, defendant to avoid detection fiendishly murdered an inoffensive woman of his own race in Oklahoma City. To escape arrest for this crime he wantonly murdered one of the foremost citizens of the state, while as a peace officer he was fearlessly performing his duty. The killing of a peace officer in resisting a lawful arrest is not only murder, but is deemed a murder of more than usual aggravation. Thus, it has been said by an author of high authority that:

"Ministers of justice, while in the execution of their offices, are under the peculiar protection of the law. This special protection is founded in great wisdom and equity, and in every principle of political justice. For without it the public tranquility cannot possibly be maintained, or private property secured, nor, in the ordinary course of things, will offenders of any kind be amenable to justice; and, for these reasons, the killing of officers so employed hath been deemed murder of malice prepense."

By a fair and impartial trial the defendant has been adjudged to suffer the just penalty of the law. The judgment of the district court is therefore affirmed. Wherefore it is ordered by this court in this case that the judgment and sentence of the district

court of Blaine county, on the defendant, Alf Hunter, alias James Kingsbery, be carried into effect by the sheriff of Blaine county, Okla., on Friday the 8th day of April, 1910, in the manner prescribed by said judgment.

FURMAN, PRESIDING JUDGE, and OWEN, JUDGE, concur.