JOHN WILEY v. STATE.

No. A-3454.   Opinion Filed Sept. 11, 1920.

(191 Pac. 1057.)

(Syllabus.)

1.    TRIAL—Refusal of Requested Instructions Not Sustained by Evidence. Instructions requested must be based upon the evidence; and, where the evidence does not sustain the request, there is no error in refusing to give the instruction.

2.    TRIAL—Province of Jury—Question Whether Witness Was Accomplice—Instruction. Where the evidence is conflicting as to whether a certain witness is an accomplice, it is proper for the court to instruct the jury on the law of accomplices, and leave the question of whether or not the witness is an accomplice for the decision of the jury as a matter of fact.

3.  **EVIDENCE—Accomplices—Refusal of Requested Instruction.**
A requested instruction, in substance to the effect that if the
jury believes any witness has been promised immunity, or en-
tertains the hope of immunity, from any prosecution pending
against him for some other offense than that upon which the
defendant is being tried, he stands in the relation of an ac-
complice to the defendant, and that the testimony of such a
witness should be corroborated in the manner required of ac-
complices, is properly refused.

4.  **EVIDENCE—Relevancy—Evidence Affecting Credibility of Wit-
ness.** As the jury is the exclusive judge of the weight of the
evidence and of the credibility of each and every witness, any-
thing that properly tends to cast light upon the credit to be
given to a witness is a matter that should be permitted to go
before the jury for its consideration.

5.  **APPEAL AND ERROR—Harmless Error—Exclusion of Evidence.**
By express statutory enactment, this court is precluded from
reversing a judgment of conviction because of the exclusion of
evidence properly tendered, unless after an examination of the
entire record it is apparent to this court that the exclusion of
such evidence probably resulted in a miscarriage of justice, or
deprived the defendant of some constitutional or statutory
right to his prejudice.

6.  **APPEAL AND ERROR—Modification of Judgment—Conduct-
ing Liquor Nuisance.** The Legislature has seen fit to vest in
this court power and authority to modify a judgment of con-
viction where the ends of justice seem to require it. For reasons
why the judgment of conviction should be modified in this
case, see body of opinion.

*Appeal from County Court, Oklahoma County;*
*W. R. Taylor, Judge.*

John Wiley was convicted of maintaining a public nui-
sance, and he appeals. Modified and affirmed.

*Giddings & Giddings,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty.
Gen., for the State.

MATSON, J. John Wiley was convicted at the May
term, 1918, in the county court of Oklahoma county, of the

crime of maintaining a public nuisance in a room and building at 501 North Hudson street, Oklahoma City, Okla., in which said room certain spirituous, vinous, fermented, and malt liquors, to wit, whisky, alcohol, and Jamaica ginger, were possessed and kept by the said John Wiley for the purpose of sale, etc., and at which said place numerous persons resorted and congregated for the purpose of drinking said intoxicating liquors, and did drink the same on said premises during a period of time continuously from the 1st day of July, 1917, up to and including the 22d day of October, 1917. A trial by jury resulted in a verdict of guilty, and the punishment assessed at a fine of $500 and imprisonment in the county jail for a period of six months. The court, after overruling the motion for a new trial, pronounced judgment of conviction against defendant in accordance with the verdict rendered.

Roy Cogswell, a witness for the state, testified in substance as follows: That he was a plain clothes man on the Oklahoma City police force; was acquainted with the defendant, and also acquainted with the premises known as 501 North Hudson street, Oklahoma City. That he had visited said premises about three times between the 1st day of July, 1917, and the 22d of October, said year. That the defendant was keeping a drug store on said premises. That the first trip witness made to the premises, Capt. Slayton and John Heep of the police force accompanied witness. That there were two or three persons in the drug store at the time, one of whom was Doc. Holman. That the defendant was also there. That when the officers went in the building, Doc. Holman ran out of the door and up the street. Witness does not remember if they found anything inside the building at that time. On the second visit, witness

found a half pint bottle of whisky in the back part of the prescription case, and a pint bottle was also found behind some bottles on a shelf in the back part of the room. John Heep was with witness on this visit. That Heep found the bottle along the north wall in the back of the drug store behind some large bottles on the shelf. These bottles of whisky were identified and introduced in evidence. The third visit witness made to the premises he found Mr. Wiley back of the prescription case and three other men back there drinking, and a whisky glass and a quart bottle were sitting on the back of the prescription case. That the men were drinking. Witness also testified that he lived about 100 feet west of the premises of the defendant, across the street from the same, and was acquainted with the general reputation of the place in that neighborhood between the 1st of July, 1917, and the 22d of October, said year, as to its being a place where alcohol, whisky, and Jamaica ginger were kept for sale, and where people congregated and resorted for the purpose of drinking intoxicating liquors, and that said place had a bad reputation in that respect.

John Heep, on behalf of the state, testified in substance as follows: That he was a police officer of the Oklahoma City Police Department, was acquainted with the place at 501 North Hudson street. That said place was owned and kept by the defendant, John Wiley, between the 1st of July and the 22d of October, 1917, that witness was at said place twice during said time. That on the first visit there a man by the name of Holman ran out of the place and threw two bottles of whisky out on the sidewalk and broke them. That on another occasion witness went there with Mr. Cogswell, and two bottles of whisky were found in the place; one was

found in a little drawer by the prescription case, and the other was sitting on a shelf back of some bottles. Witness testified that he was not acquainted with the general reputation of the place.

H. V. Owens, on behalf of the state, testified, in substance, that he was an automobile salesman for the Chalmers cars; that he had been in said business about two months; that prior to that time he had run a transfer business, and had also railroaded some; that he was acquainted with the defendant, John Wiley, and had visited his place at 501 North Hudson between the 1st of July and October 22, 1917, probably as many as a dozen times; had bought intoxicating liquor from defendant during that time two or three times; that he bought whisky, generally bought a couple of drinks at a time; that he had also bought intoxicating liquor from a fellow whose nickname was "Skeet," who worked at said place; that he bought whisky, alcohol, and Jamaica ginger from Skeet; that he bought the Jamaica ginger at the soda fountain, and the whisky behind the prescription case at the west end of the building. Witness also testified that he was acquainted with the general reputation of the place as to being a place where intoxicating liquors were kept for sale, and that said reputation was bad. Witness also testified he had been convicted of a violation of the prohibitory liquor laws. On cross-examination, witness testified that he had been convicted of bootlegging three times, that is, for unlawful possession of whisky; that no cases were pending against him at this time; that he was arrested with one Paul Atkins (sometimes called "Skeet") when Skeet hauled a grip full of whisky in witness' automobile, but that no criminal charge was filed against him; that he knew Atkins was selling whisky in defendant's place of business, and knew that

before he and Atkins were arrested for hauling whisky in the car.

Paul Atkins, a witness on behalf of the state, testified, in substance, as follows: That he lived in Oklahoma City, and was working for the Fisk Rubber Company, and had been working for said company about six months prior to that time. He had worked for defendant, John Wiley, in his drug store at 501 North Hudson as a clerk, began working there a week or so before September, 1917; that he quit working there in the latter part of October; that Wiley was the owner of the drug store, and hired the witness; that witness had seen intoxicating liquor around the drug store, and had sold the same during the time he clerked there; that he could not call the names of all to whom he had sold whisky. When he received money from the sale of whisky, he registered it in the cash register; that Mr. Wiley furnished the whisky; that he had seen Wiley sell whisky in there on numerous occasions; that witness had also sold alcohol and Jamaica ginger; that witness was not there when Heep and Cogswell raided the place. On cross-examination, witness testified that he had been convicted and paid a fine for drunkenness. Witness denied that Mrs. Wiley had fired him for selling whisky in the drug store, or had told him to get out of the store. Witness testified that he and Vick Owens had been arrested for transporting whisky in a suit case; that John Heep and Roy Cogswell were two of the officers that arrested them; that they filed a charge against witness for that offense; and in this connection the following proceedings were had:

"Q. What was that for—did you ever put up a bond in that case?

"By Mr. Callihan: Objected to; not proper impeaching question. The only question he could be asked is if he

has ever been convicted; the fact that he was arrested is no evidence of guilt.

"By the Court: The court understands that.

"Mr. Callihan: I move to strike the question and answer with reference to ever being arrested in the county court.

"By the Court: Sustained.

"Q. What has become of that transporting charge in the county court?

"By Mr. Callihan: Objected to as not a proper impeaching question.

"Q. You were arrested for transporting in October; has that case ever been tried yet?

"By Mr. Callihan: Objected to as incompetent, irrelevant, and immaterial.

"By the Court: Sustained.

"By Mr. Giddings: Exception.

"By Mr. Giddings: We offer to prove that the witness Atkins has a case pending against him in this court, for unlawful transportations of liquor, and that it has been pending since October 17th and has never been tried as indicating either a promise of immunity on the part of the prosecution or a hope of immunity on the part of the witness. The evidence being admissible, the weight of it is entitled to the consideration of the jury.

"By the Court: Overruled.

"By Mr. Giddings: Exception."

On behalf of the defendant, Alonzo Barton testified substantially as follows: That he was manager of the Niles-Mosier Cigar Company, and had been in that business a little over two years, and knew defendant, John

Wiley, and visited his place at 501 North Hudson about once a week for the purpose of selling cigars; that witness never saw any liquor in there, or never saw anything to indicate while he was there that liquor was sold in said place.

William R. Humphrey, on behalf of the defendant, testified substantially as follows: That he was in the wholesale cigar business; had lived in Oklahoma City 21 months, knew defendant Wiley and his place of business, and would visit said place on an average of one or two times a week, and stayed there probably ten minutes at each visit. That he never saw any whisky sold there; never saw any crowds carousing around in there, or anything indicating that liquor was sold on said premises during his visits there.

E. H. Dudley, on behalf of the defendant, testified, in substance, as follows: That he was in the wholesale drug sundry business in Oklahoma City, knew defendant, had known him about eight years, and had occasion to visit his place of business on North Hudson for the purpose of selling defendant goods; that he never saw any evidence of defendant selling intoxicating liquor in said place; never saw any crowds assembled there, or any disorder or conditions indicating that intoxicating liquor was sold there, and never saw any people drunk in there. That the general reputation of the drug store between July 1, 1917, and October 1, 1917, as a peaceable, law-abiding place was good. That the general reputation of the defendant in the community in which he lived as a peaceable, law-abiding citizen was good.

Ben Waldrep, on behalf of the defendant, testified, in substance, as follows: That he was a foreman for Towler's Laundry; knew the defendant for about two years; lived in the neighborhood of his drug store for nearly a year,

and was in the drug store on the occasion that some officers made a search of the same; had gone there to buy a package of cigarettes. That one of the officers came in about the same time witness did. Witness went in and told Mr. Wiley he wanted some cigarettes, and Wiley threw the cigarettes over to witness, and just then one of the officers said, "What have you got in here?" and about that time the other two officers stepped in, and witness stood and watched them, and two of them went back to the back end of the store, and the captain, who had on a blue suit and cap, went behind the counter and show case, and reached around and drew a bottle with some whisky in it out of his hip pocket, and reached up on the shelf, and then ordered Mr. Wiley to open the safe, and then the officer said, "What are you doing with this here whisky?" and Wiley said, "It isn't mine." Witness saw the officer take the whisky out of his pocket and reach it up on the shelf. The witness was in the place frequently before that, nearly every evening. That he had never seen any liquor sold there, and had never seen any carousing around or drinking in there. That the general reputation of the defendant in the community as a law-abiding citizen was good.

Mrs. J. D. Wiley testified on behalf of the defendant, in substance, as follows: She was the wife of the defendant. That defendant operated a drug store at 501 North Hudson street, and had several different clerks, one being Paul Atkins, and another Ed Paschel. That witness would go there to the drug store nearly every day about noon, and stay until 10 o'clock at night. That Paul Atkins commenced to work there in September, 1917. That Atkins was always drinking and bringing liquor in there, and witness told him to get out and stay out. That defendant never kept intox-

icating liquors in the drug store, nor sold the same in there. That witness never saw any in there nor saw any men loitering around or carousing in there. Witness also testified that she had a conversation with Paul Atkins, in which she told him that she had heard that he was selling intoxicating liquor in there, and that he had to get out if he was bringing it in there, and Atkins said it was up to John, and if he wanted him out he could put him out. Witness also testified that she remembered the occasion of Atkins and Owens getting arrested for transporting liquor about two weeks before the officers came to the store and found liquor there. That the witness had heard her husband tell Atkins not to come in there drunk, and not to sell any liquor in there.

Counsel for defendant also offered to introduce in evidence the appearance docket of the county court of Oklahoma county, in case No. 4694, entitled State of Oklahoma v. Paul Atkins, to which counsel for the state objected on the ground that the evidence was incompetent, irrelevant, and immaterial, which objection was sustained by the court, and exception taken by counsel for the defendant, at which time the following proceedings were had:

"By Mr. Giddings: We offer in evidence page 136, Appearance Docket, in the County Court of Oklahoma County, Oklahoma, Criminal No. 12, the same being the case of the State of Oklahoma v. Paul Atkins, No. 4694, Information filed October 6, 1917. October 12 bond fixed $500. Defendant ordered released October 12th. October 25th, entry order set for November 6th. November 6th, entry stricken for term on application state. November 27th, case set for December 13th. December 13th, entry order stricken from assignment motion state. No further action taken in said cause since December 13, 1917.

"By Mr. Callihan: Objected to as incompetent, irrelevant, and immaterial for any purpose.

"By the Court: Sustained.

"By Mr. Giddings: Exception.

"By Mr. Giddings: I want to offer in evidence the information in case State v. Paul Atkins, and particularly the names of the witnesses on the information, the same being the same case as shown by the appearance docket.

"By Mr. Callihan: Objected to as incompetent, irrelevant, and immaterial.

"By the Court: Sustained.

"By Mr. Giddings: Exception."

John Wiley, defendant, testified that he was 42 years of age, married; that he ran the drug business at 501 North Hudson between July 1 and October 22, 1917; that he had been in the drug business some 20-odd years; that he was a registered prescription clerk, and had been in business at 501 North Hudson since March, 1917; that he had heard the testimony of Vick Owens, and that he had never sold any whisky to Vick Owens, and if the Atkins boy sold any whisky to said Owens it was without witness' knowledge; that witness had employed Atkins to run the soda fountain; that witness had never sold any liquor in that place. Witness remembers when the officers came there and made a search, and claimed that they found whisky in there; that that was about two weeks after the Atkins and Owens boys were arrested for transporting liquor; that witness does not remember of any raid having been made on his premises before these boys were arrested for transporting; that witness never permitted people to congregate in his place, or drink intoxicating liquor in there; that his wife assisted him in conducting the store; that he had never been con-

victed of any crime, had never sold or bootlegged intoxicating liquor; that he fired the Atkins boy when he found out that he was not doing the right thing. On cross-examination, the defendant testified, in substance, that he had come to Oklahoma City from McAlester, and had moved from Lawton to McAlester; that he had run drug stores both in Lawton and McAlester; that Paul Atkins had worked for him in Lawton for about a year; that he had furnished money to Paul Atkins, when in Lawton, and that Paul Atkins had sold whisky from his own home in Lawton; that witness had got interest on the money that he had loaned Atkins to buy whisky with.

In rebuttal, for the state, W. W. Slayton, testified, in substance, as follows: That he was captain of the Oklahoma City Police Force; knew defendant, Wiley, when he saw him; was at defendant's place of business on October 21, 1917, with Cogswell and Heep. That he visited there between 1:30 and 3 o'clock in the afternoon. That witness did not take any bottle of whisky to the drug store with him in his pocket, and put it on a shelf and then ask defendant where he got that whisky. That he had no recollection of seeing any whisky in the drug store, except that he might have seen a small quantity in some bottles, and that he did not find any whisky himself when he was there.

The defendant requested the court to give the following instructions, which were refused and excepted to by counsel for defendant, and exception allowed by the court:

"(1) You are instructed that under the law the witnesses Paul Atkins and Vick Owens are accomplices, and you cannot convict the defendant upon their testimony unless the same is corroborated by other evidence tending to

connect the defendant with the offense charged, and the corroboration is not sufficient if it only shows the commission of the offense.

"(2) Defendant is on trial for maintaining a public nuisance, and not for any other offense. If you find that at some other time he committed some other offense, the same can only be considered by you as affecting his credibility.

"(3) 'If you believe that one witness, or witnesses, in this case has been promised immunity, or entertains the hope of immunity, you may take that fact into consideration in weighing the testimony of any such witness, or witnesses. · In such event the testimony of such witness should be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

"By immunity is meant some promise, express or implied, by which such a witness gains some advantage to himself, either in lighter punishment for his crime, by dismissal of a criminal charge against him, and by obtaining further consideration by so testifying, than he would obtain from the prosecution otherwise, or even if he hopes to obtain such immunity, and so hopes when testifying, that fact also may be considered by you in weighing his evidence and fixing his position in this case as an accomplice, or as one who has been promised or hopes for immunity."

It is first contended that the trial court erred in refusing to give defendant's requested instruction No. 2, *supra*, to which refusal proper exception was taken at the time. Counsel for defendant strenuously contend that the refusal of the court to give this instruction was prejudicial to the substantial rights of the defendant, in that there was evidence introduced upon the cross-examination of

the defendant which tended to show that, while the defendant was engaged in the drug business in the city of Lawton, Okla., defendant furnished certain money to Paul Atkins, who was afterwards employed by him in his place of business at 501 North Hudson, Oklahoma City, for the purpose of providing funds to said Atkins with which to obtain whisky for illegal sales; that while such evidence tended to establish the guilt of the defendant of an independent crime, it was only admissible for the purpose of affecting the credibility of the defendant, and not for the purpose of establishing his guilt of the crime charged, because the same was not connected in any manner with the keeping of the alleged public nuisance at 501 North Hudson street, in Oklahoma City, which crime, if any, occurred long subsequent to the time defendant furnished money to the said Atkins for this illegal purpose. There is evidence in the record to the effect that the defendant, during the period between July 1, 1917, and October 22, 1917, as alleged in the information, made divers sales of whisky to persons in his said place of business at 501 North Hudson street. This evidence of particular sales by the defendant in said place of business during said period of time was competent and material to the issues in the case. and was relevant, in that it tended to show the intent of the defendant to sell intoxicating liquor in said place; the searching officers having found quantities of whisky in said place of business during that period of time. It is apparent, therefore, that the evidence on the part of the state tended to prove other offenses connected with one for which he was being tried, which was competent as tending to establish his guilt of the offense charged.

The requested instruction was too general. Counsel should have limited the request to the evidence of the al-

leged offense of aiding and abetting Paul Atkins in the sale of whisky at Lawton, Okla. This was not done, and the trial court could have with propriety refused to give the requested instruction because it was not restricted, in its terms, to what the defendant considered was proof of an offense not connected with the one for which defendant was being tried. As heretofore stated, the state's evidence tended clearly to connect the defendant with sales of whisky made in his drug store between July 1, 1917, and October 22, 1917, by his clerk, Paul Atkins; and, while the defendant admits that he furnished money to Paul Atkins with which the said Paul Atkins probably purchased intoxicating liquor for the purpose of illegally selling same from Atkins' home in Lawton, the testimony of the defendant on cross-examination was not sufficient to brand him as an accomplice of Atkins in the sale of whisky at Lawton. The defendant denied any interest in the whisky that Atkins sold at Lawton, and denied that he received any profit from any sale made by Atkins at Lawton. He testified merely that he loaned Atkins money, upon which Atkins paid him interest. Had the defendant objected to this line of cross-examination, the trial court should have excluded the same, but no objection was interposed by counsel representing defendant, and the answers of the defendant were insufficient to brand him as a criminal, in that he aided and abetted Paul Atkins in the illegal traffic in whisky while they both lived at Lawton. Had the instruction, therefore, been in proper form, it is apparent that the refusal of the trial court to give the same would not have been prejudicial to the defendant in this case, because his own testimony does not indicate his guilt of any criminal offense connected with the sale of intoxicating liquors by Atkins

at Lawton, as contended for in the brief of counsel for defendant.

Instructions requested must be based upon the evidence, and where the evidence does not sustain the request, there is no error in refusing to give such requested instruction. *Hunter v. State*, 3 Okla. Cr. 533, 107 Pac. 444.

It is also contended that the trial court erred in refusing to give defendant's requested instruction No. 1, *supra*. In this connection, counsel contend that, where the undisputed evidence shows as a matter of. law that a witness is an accomplice, it becomes the duty of the court, when specially requested by the defendant so to do, to instruct the jury that such witness is an accomplice, and must be corroborated. Counsel admit, however, that when the evidence is in dispute as to whether a certain witness is an accomplice, it is then the general and accepted rule that the court should instruct the jury on the law of accomplices, and leave the question of whether or not the witness is an accomplice for the decision of the jury as a matter of fact. In this case, counsel for defendant say that there is no dispute in the evidence as to the witness Paul Atkins being an accomplice in the commission of this crime. With this contention we cannot agree. While some evidence on the part of the state, standing alone, would indicate that Atkins was an accomplice of defendant, there is other evidence in the record by defendant and some of his witnesses which directly conflicts with the state's evidence on this question, and which tends to prove, if believed by the jury, that Atkins was not an accomplice of the defendant in maintaining the alleged nuisance at 501 North Hudson street during the period of time alleged in the information. The trial court gave an instruction defining an accomplice,

and on the necessity of corroborating such a witness by other evidence tending to connect the defendant with the commission of the offense. The instruction given was a correct statement of the law applicable to accomplices' testimony, and was sufficient, where the evidence is in dispute as to whether or not a certain witness is an accomplice. We think, therefore, that the trial court did not err in refusing to give instruction No. 1, because the law applicable to the evidence in the case was fairly covered by the instruction given on the court's own motion.

It is also contended that the trial court erred in refusing to give requested instruction No. 3. This instruction was properly refused. It does not correctly state the law. In the requested instruction, the court is asked to advise the jury that, if they believe any witness has been promised immunity, or entertains the hope of immunity, from any prosecution pending against him, the testimony of such witness, or witnesses, should be corroborated by such other evidence as tends to connect the defendant with the commission of the offense and the corroboration is not sufficient if it merely shows the commission of the offense and the circumstances thereof. In other words, the request asked the court to instruct the jury that any person who had been promised immunity from prosecution for any other offense for giving testimony in this case was to be treated as an accomplice of the defendant, so far as the necessity of corroboration of such a witness was concerned. There is no statute of this state that requires that extent of corroboration of a witness who has merely been promised immunity from prosecution for some other offense not connected in any way with the offense for which the defendant is being tried.

Further, it is contended that the trial court erred in refusing to permit the defendant to introduce in evidence the appearance docket of the county court of Oklahoma county, in a case against Paul Atkins then pending in said court, for the purpose of proving his interest and hope of immunity by testifying for the state as a witness in this case. We think that evidence that there was a criminal action pending against the witness Paul Atkins in the same court undetermined, controlled by the same prosecuting officers, was proper to be shown, for the purpose of affecting the credibility of the witness. Counsel for de-·fendant offered to show, on the cross-examination of the witness Paul Atkins, that such a case was then pending against him, and upon objection by the state the trial court excluded this evidnece. Thereafter counsel for defendant offered to introduce the appearance docket of said court for the purpose of showing these facts, and this evidence was excluded, also over the exception of counsel for defendant. While this court has held that it is not a proper method of impeachment of a witness to show merely that he has been arrested and charged with crime, it is nevertheless proper for the jury to know that at the time the witness is testifying he is in a position to receive some benefit from the same prosecuting officers should his testimony be favorable to the prosecution, even though an express promise of immunity had not been given the witness. As the jury is the exclusive judge of the weight of the evidence and of the credibility of each and every witness, anything that properly tends to cast light upon the credit to be given to a witness is a matter that should be permitted to go before the jury for its consideration. We think, therefore, in this instance, that the trial court should have permitted counsel for defendant to cross-examine the wit-

ness Atkins along the lines indicated by the questions asked, and by the offer of proof made by counsel for defendant.

However, this court, by express statutory enactment, is precluded from reversing a judgment of conviction because of the exclusion of evidence, unless after an examination of the entire record it is apparent to this court that the exclusion of such evidence probably resulted in a miscarriage of justice, or deprived the defendant of some constitutional or statutory right to his prejudice. An examination of the record in this case discloses ample evidence, in addition to that given by the witness Atkins, sufficient to have authorized the conviction of the defendant. We cannot say, therefore, that the exclusion of this evidence resulted in a miscarriage of justice.

The punishment imposed by the jury is the maximum fixed by the statute. It is the punishment generally imposed upon those who are confirmed violators of the law, or else in aggravated cases. This is the first time defendant has ever been convicted.

The Legislature has seen fit to vest this court with power and authority to modify a judgment of conviction, where the ends of justice seem to require it. In this instance, after a careful consideration of the evidence in connection with the alleged grounds for reversal, the conclusion is reached that the judgment should be modified to provide a fine of $250 and imprisonment in the county jail for a period of 30 days; and, for the reasons stated, this judgment is modified to provide a fine of $250, instead of a fine of $500, and to provide imprisonment in the county jail for a period of 30 days, instead of six months, and, as so modified, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.