## T. J. BRADSHAW v. STATE.

No. A-3638—Opinion Filed May 7, 1921.

(197 Pac. 715.)

(Syllabus.)

1. **RAPE—Assault with Intent—Evidence.** In a prosecution for assault with intent to rape, evidence examined and held sufficient to support the verdict and judgment of conviction.

2. **CONTINUANCE—Absence of Subpoenaed Witness.** A motion for a continuance on the ground of the absence of a witness who had been subpoenaed was properly refused where the defendant did not ask for an attachment for said witness.

3. **EVIDENCE—Age—Census Enumeration Lists.** Under article 9. c. 219, Session Laws 1913, providing for the taking of a schol-

astic census each year in each school district, and that the report of the enumerator shall be made to the county superintendent of public instruction, such enumeration lists are competent and admissible on an issue as to the age of a person, if duly authenticated, or by proof that they come from the proper repository.

4.     APPEAL AND ERROR—Review—Fact Findings on Motion for New Trial. The finding of the trial court upon an issue of fact, arising upon affidavits and evidence developed on a motion for a new trial, will not be disturbed, where the evidence reasonably tends to support such finding.

Appeal from District Court, Bryan County;

J. M. Crook, Judge.

T. J. (Baldy) Bradshaw was convicted of assault with intent to rape, and he appeals.    Affirmed.

Robert Crockett, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

DOYLE, P. J.   The plaintiff in error, T. J. (Baldy) Bradshaw, was convicted of assault with intent to rape one Lola Sconce, a female under the age of 16 years, and his punishment assessed at confinement in the county jail for 1 year and a fine of $250.   He appeals from the judgment rendered in accordance with the verdict, and assigns as error: (1) The overruling of the application for continuance; (2) the rejection of competent testimony; (3) that the verdict is not sustained by the evidence; (4) the overruling of the supplemental motion for a new trial.

The evidence shows that Lola Sconce lived in the town of Platter; that on the date alleged she was at the home of Ruth Willingham, a neighbor girl, and the defendant called there and told her that her parents intended to send her

to the reform school, and that he and Charles Fisher would take the girls to Dallas that night; then he told them to go over to the log cabin on Frank Walden's place. About 11 o'clock that day Lola Sconce and Ruth Willingham went to the log cabin which was about two miles from town. The defendant visited the log cabin two or three times during the day, and the last time told the girls to meet him and Charles Fisher that night near the school house outside the town; that about dusk they went to the appointed place and found the defendant and Fisher there with a car, and the defendant told the girls to get into the back seat; that after they passed the town of Mead the Willingham girl changed seats with the defendant at his request; after going about two miles the car was stopped.

Lola Sconce testified:

"When the car stopped the defendant asked me if I would have intercourse with him, and I told him I would not; he got mad and began cursing; he called me a damn whore and almost everything else. I got out of the car; then he got out; Ruth got out next. It was in the timber; there was no house in sight, and it was dark. He took hold of me, put his arm around me, and asked me if I was going to do it with him. I told him no, I was not, and I jerked loose from him. Ruth had a gun and told him if he took hold of me again she would kill him. Then he got into the car and said they would not take us back home; that he would make us walk back. Mr. Fisher said no, he would take us back, and we got into the car and rode back home; not all the way; we got out near the railroad crossing. They both told us not to tell anything about it."

She further testified that her age was 15 years.

Ruth Willingham testified:

"My age is 16 years. When the car stopped I saw the defendant put his arms around Lola; she jerked loose from him and got out of the car; then he got out and hugged her again; she jerked loose and he called her a damn whore. She was leaning against the fence, and he walked up and put him arm around her and tried to pull her away. He was saying something, but I do not know what he said. She was crying. I told him to cut it out and go on. She said, 'Let me have the gun.' I said, 'No; I will not let you have the gun, but if he touches you any more I will kill him,' and he turned her loose. Mr. Fisher was in the car and he told her to get back into the car and he would take her home; the defendant said they ought to make us walk back;" that she knows the defendant is a married man, and that Lola Sconce is not married.

Claude Sconce testified:

"Lola Sconce is my sister. She will be 16 years old next October."

Jim Kiersey testified:

"I was deputy sheriff for Bryan county. I received a warrant for the defendant on the 17th day of November, and arrested him at Muskogee on the 5th day of December. I would have arrested him sooner, but I could not locate him."

The defendant, as a witness in his own behalf, testified:

"I did not make any effort at any time to have sexual intercourse with this girl, Lola Sconce, nor did I put my hands on her for the purpose of forcing her to have sexual intercourse with me. I did not at any time solicit or persuade her to have sexual intercourse with me. I was assisting the girls to get away from home at their request. They said that they wanted to go to Mead to catch the train for Dennison. I advised them all the way through to go back home. The girls said, 'If you ain't going to drive us we will get out and walk.' I said, 'No; you ought to get

in and go back to Platter and catch the 10 o'clock train.'
They would not consent to do that, and both got out of the
car and walked off down the road 15 or 20 steps.    Fisher
said, 'Go down there, Bradshaw, and see if you can get
them to come back.'    I went down and said, 'It is 5 or 6
miles down to Colbert; you can't possibly make it.'    They
both got mad and they cursed me because we would not
drive them on.    Fisher turned the car around, and I went
out and took hold of Miss Sconce by the arm and got her
back into the car, and the Willingham girl got into the
seat with Fisher, and we came back.    They got out at the
roalroad crossing half a mile from Platter."

Cross-examination:

"When we got back to Platter I went home.    The
next day I went to Madill; from there I went to Houston;
then I went to Panama, Okla., and met my wife there; then
I went to Muskogee.    My purpose was to visit my people,
and my wife concluded to go and visit her people and I
was advised by Frank Walton that I had better leave Plat-
ter."

Charles Fisher, called and sworn as a witness for the
defendant, claimed his privilege and refused to testify, on
the ground that his testimony might tend to incriminate
him on the charge pending against him, and he was by the
court excused from testifying.

When the case was called for trial the defendant filed
a motion for continuance on account of the absence of G.
W. Sconce, who had been duly subpoenaed, and who, if
present, would testify that he said Lola Sconce was his
daughter, and was over the age of 16 years at the time of
the alleged offense, which motion was overruled.

It is sufficient to say that the defendant did not ask
for an attachment for said witness.    If an attachment had

issued and proved unavailing on account of sickness, absence, or other sufficient reason, then a different question would be presented. We do not think the court erred in overruling the motion for continuance, or refusing a new trial based on this ground.

During the course of the trial counsel for the defendant offered in evidence what he termed "the record of the scholastic report of school district 51 of Bryan county, for the years 1917 and 1919," which appear to be blanks filled out by said school district "enumerator," each containing the name of G. W. Sconce, post office, Platter, and the name of the child, Lola Sconce, date of birth in Exhibit 1, October 12, 1902, and date of birth in Exhibit 2, October 10, 1902; one is signed by the "enumerator"; in the other the name of the "emunerator" is blank. On objection of the state this evidence was excluded.

Article 9, c. 219, Session Laws of Oklahoma 1913, provides for the taking of a scholastic census each year, upon which the state and county apportionments of public school funds are made, and provides that the district board shall appoint an "enumerator," and that the report of the "enumerator" shall be made to the county superintendent, who shall check each name and date of birth and approve the same. Thus under the statute the scholastic census reports are public records in the custody of county superintendents of public instruction.

Section 5115, Rev. Laws, provides:

"The books and records required by law to be kept by any county judge, county clerk, county treasurer, register of deeds, clerk of the district court, justice of the peace, police judge or other public officers, may be received in evidence in any court."

Under the statute these school census enumeration lists were competent and admissible in evidence on the issue of the age of the prosecutrix, if authenticated, or if they were properly proved to be such by evidence showing that they came from the proper repository or custody. 1 Greenleaf on Ev. (16th Ed.) par. 483; Stark. Ev. 315; 9 A. & E. Ency. L. (2d Ed.) p. 883.

Here, however, there was no authentication, and there was no proof that the purported enumeration lists offered came from the proper repository, or custody. The rule is that, where the original document is offered in evidence, it must always be proved to be that which it purports to be, as by showing that it came from the proper repository or by proof that it came from the proper custody. The record shows that was not done in this case, and for this reason the court did not err in excluding the purported enumeration lists offered by the defendant.

As to the sufficiency of the evidence, it is sufficient to say that the testimony for the state was that the assault was by force and violence, and that the executrix resisted, and the intent with which the assault was committed was a question for the jury to determine.

Finally, it is contended that the court erred in overruling the supplemental motion for new trial, based upon the alleged misconduct of the county attorney in failing to call G. W. Sconce, the father of the prosecutrix, to testify as a witness. Upon the hearing the defendant offered proof tending to show that the witness G. W. Sconce, on the order of the county attorney, was brought to the court house after defendant's motion for continuance had been overruled, and that this was without the knowledge of the defendant or his attorney. The state offered evidence tend-

ing to show that the defendant and his counsel were notified of the presence of the witness G. W. Sconce while the trial was in progress.

In overruling the supplemental motion for a new trial the court stated:

"The court is now under the impression that all parties knew that Mr. Sconce was in attendance before the defendant closed his testimony; that a statement was made that Mr. Sconce was in attendance as a witness."

As a general rule, the finding of the trial court upon an issue of fact, arising upon affidavits and evidence developed on a motion for a new trial, will not be disturbed, where the evidence reasonably tends to support such findings. We think the court properly overruled the motion.

Having noticed and considered all the assignments of error presented by the defendant's brief, and upon a careful examination of the entire record, we are of the opinion that the defendant had a fair trial, and that no error was committed by the trial court prejudicial to the substantial rights of the defendant.

The judgment of conviction is therefore affirmed.

MATSON and BESSEY, JJ., concur.