### W. P. COTTRELL v. STATE.

No. A-7999. Aug. 28, 1931.
Rehearing Denied Nov. 21, 1931.
(5 Pac. [2d] 178.)

W. D. French, E. A. Pruitt, V. C. Phillips, W. E. Utterback, Allen, Underwood & Canterbury, and Paul Pinson, for plaintiff in error.

J. Berry King, Atty. Gen., and Ed. Crossland, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Johnston county of the crime of embezzlement, and his punishment fixed by the jury at a fine of $24,000 and imprisonment in the state penitentiary for a period of three years.

The evidence of the state was that on and for a long time prior to the 7th day of December, 1926, Anna L. Campbell, a daughter of J. C. Dodd, was the treasurer of the board of education of school district No. 29 in Johnston county; that J. C. Dodd, Mrs. J. W. Hopkins, and Charles L. Hulsey constituted the board of education of said district; that J. C. Dodd was president of the First

National Bank of Milburn, in Johnston county; that Anna L. Campbell was cashier, and W. P. Cottrell, J. T. Gardner, and W. E. Utterback were the board of directors; that Anna L. Campbell, while treasurer of the board of education of said school district and cashier of the First National Bank of Milburn, received $12,000 from the county treasurer belonging to the sinking fund of said school district, and deposited the same in the First National Bank of Milburn; that on May 5, 1926, she was issued a certificate of deposit for $12,000 which was charged against her credit as school treasurer in her account in said bank, thus reducing the demand deposit account of said district $12,000; that on December 7, 1926, a resolution was adopted by the board of education of said school district authorizing the treasurer thereof to loan to the defendant, W. P. Cottrell, a sum not in excess of $12,000 of its sinking fund due July 1, 1928, at 4 per cent. interest from date, upon a promissory note to be executed by the defendant and secured by the personal indorsement of J. T. Gardner and sixty shares of the capital stock of the First National Bank of Milburn; that defendant executed the note for $12,000, the same was indorsed by J. T. Gardner, and there was attached to the note sixty shares of the capital stock of the First National Bank of Milburn; that thereupon Anna L. Campbell, as treasurer of the board of education, assigned and delivered the certificate of deposit to defendant; that defendant deposited this certificate of deposit for $12,000 in the First National Bank of Milburn, and was given credit for that amount in the bank in an account entered "W. P. Cottrell, Special."

That the board of directors of the First National Bank of Milburn had voluntarily assessed themselves 50 per cent. of the capital stock of the bank in order to make

good its capital stock and surplus and prevent the bank being closed by the comptroller of the currency. That by reason of said assessment W. E. Utterback paid the bank $950 in cash in full of his assessment, and that he is not further in any wise connected with any of the things complained of by the state in the information.

That W. E. Utterback owned 19 shares of the capital stock of the bank, defendant 27 shares, J. T. Gardner 10 shares, Anna L. Campbell 5 shares, J. C. Dodd 161 shares, Ella and Bessie White 6 shares, Mrs. Bessie White 10 shares, Demitt D. Hayden 10 shares, and J. Henry Johnston 5 shares; that under the special assessment voted, the stockholders above named would have to pay in cash to the bank $12,500; that on the 31st day of December, 1926, the bank took credit for $12,500 due from its stockholders and entered it as an asset of the bank; that on the 4th day of January, 1927, $10,800 was charged into the special account of defendant as having been paid on the assessment of defendant, of J. C. Dodd and of J. T. Gardner; that $250 in cash was paid in by J. Henry Johnston, and that this payment so made purported to pay in full the special assessment of 50 per cent. of the par value of the capital stock; that defendant's share of the special assessment was $1,350, which he purported to pay out of the $12,000 borrowed from the school district; that the assessment of J. C. Dodd was $8,050, which purported to be paid out of the $12,000 borrowed from the school district; that, Ella and Bessie White, Mrs. Bessie White, and Demitt T. Hayden being unable to pay the 50 per cent. assessed to their 26 shares, defendant became the owner of those shares and purported to pay the assessment out of the $12,000 borrowed from the school district; that, when demand was made on defendant to pay the note, he refused to do so and later was adjudged a bankrupt; that most

of the property defendant was supposed to own was found to be in his wife's name.

Defendant did not take the witness stand, and offered no evidence.

Defendant contends first that no crime was committed because the certificate of deposit had no value; that the transaction was one merely of paper and no addition was made to the assets of the bank by the transfer of credit. That because of the fact that it was necessary for the stockholders to levy the 50 per cent. assessment on the capital stock, and because of the fact that there was only a little more than $10,000 in the bank and with its depositories, and because of the further fact that the bank had deposits at that time of $125,622.59, it was insolvent; that therefore the certificate of deposit had no value.

The record discloses that on December 7, 1926, the date the certificate of deposit in question was turned over to Cottrell and deposited in the bank, the individual deposits subject to check totaled $113,015.29, certificates of deposit $12,525, and cashier's checks $82.30, making a total of $125,622.59. That at the time the doors of the bank were closed, the personal deposits amounted to $12,362.34 and the public deposits amounted to $55,000. That after this certificate of deposit transaction occurred the liabilities of the bank were reduced more than $55,000 by payment to its depositors out of its assets. That the receiver had paid a dividend of 17 per cent. to depositors in the failed bank.

Section 2132, C. O. S. 1921, provides:

"Any person guilty of embezzlement is punishable in the manner prescribed for feloniously stealing property of the value of that embezzled. And where the property embezzled is an evidence of debt or right of action, the

sum due upon it, or secured to be paid by it, shall be taken as its value."

In State v. McCray, 15 Okla. Cr. 374, 177 Pac. 127, this court said:

"Section 2660, Rev. Laws 1910, construed, and held not to define any material ingredients of the crime of larceny of a written instrument, but merely to establish a rule of evidence whereby the value of the written instrument is to be determined in a prosecution for the larceny thereof."

In Ellis v. State, 138 Wis. 513, 119 N. W. 1110, 20 L. R. A. (N. S.) 444, 131 Am. St. Rep. 1022, that court said:

"If a person deposits in a bank for his credit a check, and it is presently treated between such person and such bank as money, the former obtaining credit upon which he may, at his pleasure, draw for money, section 4541, St. 1898, is satisfied, as regards a deposit of money."

In the body of the opinion the court said:

"True, the check, as it went over the counter, was not money, but it was treated as such between the bank and its customer. It was taken as the equivalent of money at the face value. The money equivalent was placed to the credit of the depositor the same, in all respects, as if legal tender money had been passed over the counter. The relation of debtor and creditor, as between the bank and the depositor, with the characterization of liability on the one side and expectancy on the other as to payment on demand at any time within the banking hours, was created. In short, the transaction in practical effect, was the same as if the bank had passed to its customer $1,000 for the check and he had immediately passed the same back for deposit and received credit therefor."

The board of education recognized the certificate of deposit as having a value of $12,000 as shown by the reso-

lution adopted by the board on December 7, 1926, when they authorized $12,000 of the sinking funds to be loaned to defendant; the defendant recognized the value of this certificate to be $12,000 by giving his note to the school treasurer in that amount, and the First National Bank accepted the certificate of deposit as being of the value of $12,000 by crediting defendant's account with $12,000. The defendant and his confederates then canceled their obligation to the bank in the aggregate sum of $12,000, thus accomplishing everything with the $12,000 certificate of deposit that they could have accomplished with $12,000 in cash.

The contention of defendant that the certificate of deposit had no value is without any merit.

Defendant next contends that, because the school treasurer had deposited the $12,000 in the bank and taken a certificate of deposit for the same, that this constituted a loan, and that the money had already been embezzled.

The state is not reduced to the proposition of whether this transaction constituted a loan in good faith, and it makes no difference in this case whether it was a "loan" or an "exchange." There was a misappropriation—whatever name it may be called by—which was not authorized by law. The school district had $12,000 in its sinking fund; it was used by this defendant and his confederates to cancel their personal obligations in that amount. The fact that others may have theretofore committed illegal acts did not authorize this defendant to come in with them and commit other illegal acts by which this sinking fund was entirely lost.

Defendant next contends that there is a fatal variance between the allegation of the information and the proof,

in that the allegation was that the defendant embezzled $12,000 in good and lawful money, while the proof showed that it was a certificate of deposit.

In State v. Krug, 12 Wash. 288, 41 Pac. 126, 132, in the body of the opinion, that court said:

"In charge No. 6 the court instructed the jury that if they believed from the evidence that there was money deposited to the credit of the city in the Washington National Bank, and if the defendant drew an instrument, signing the same as city treasurer, directing Henry Fuhrman to be paid $10,000, and that the Washington National Bank obeyed the direction, and charged on its books the money to the city, and lessened its credit $10,000, such was a payment of money, and that the jury should construe the check or instrument merely as the instrumentality by which the city of Seattle's money was transferred from the possession of the defendant to Henry Fuhrman; and upon these facts, if the transfer was a profit, they must find the defendant guilty as charged. We think this instruction was exactly right.* * * Under these facts the appellant claims there was only an exchange of credits, and no money was paid. The instruction of the court is based upon the theory that, in contemplation of law, at least, this was money. It would be a travesty upon the administration of the law if treasurers who are the custodians of the funds of the people should be allowed to escape the penalty of embezzlement by any such subterfuge as this theory would protect. The treasurer, by law, is made responsible for all moneys which come into his possession. He is the custodian of those moneys. He can keep them in a safe under his own personal inspection and jurisdiction, or he can deposit them in the banks; but, whether kept in a personal safe or deposited in a bank, they are still, to all intents and purposes, the funds of the city. The practical result of the transaction in this case was that when this check was given to Fuhrman, and was paid to Fuhrman by the New York exchange, and that amount charged to the account of the city, the city of

Seattle had its account decreased to the amount of the check, and it was just as much a disposition of that $10,000 by the treasurer as though he had gone to the bank and got the money himself, and paid it to Fuhrman, or had loaned him that amount of money out of the specie which he received, before it had been taken to the bank at all." To the same effect are: Cunningham v. State, 115 Ark. 392, 171 S. W. 885; State v. Shove, 96 Wis. 1, 70 N. W. 312, 37 L. R. A. 142, 65 Am. St. Rep. 17; State v. Salmon, 216 Mo. 466, 115 S. W. 1106.

In Fulkerson v. State, 17 Okla. Cr. 103, 11? Pac. 1092, this court said:

"Where the defendant, as treasurer of a school district, is charged with the embezzlement of a certain sum of money belonging to the said district and the proof adduced upon the trial showed that the defendant received, as treasurer of said school district, a certain warrant issued to said school district by the county treasurer and deposited the same to his personal credit in a bank and afterwards checked against said fund for his personal use, held there is no fatal variance between the allegations of the information and the proof."

In the body of the opinion, this court said:

"In view of the fact that the charge here is the embezzlement of public funds, great latitude must be permitted in the description of the money or funds alleged to be embezzled, because the people exercise no close supervision over the acts of a public official and cannot, like private individuals, direct the custody of its funds at any particular moment."

In French v. State, 37 Okla. Cr. 350, 259 Pac. 162, this court said:

"An information charging the offense of receiving a deposit of cash and checks in an insolvent bank, under the provisions of section 4128, Comp. St. 1921, is sustained by proof that cotton tickets showing the weight and price

paid for certain cotton, with the name of the purchaser of the cotton indorsed thereon, were received by the bank as a cash item, and credit given to the holders of such tickets, and the account of the purchaser debited with the amount thereof."

Under the facts in the case and the authorities above cited, the contention of the defendant that there is a fatal variance between the information and the proof is without any merit.

Defendant next complains of the instructions of the court given on its own motion.

The instructions, while brief, are sufficient to cover the law of the case.

Defendant next complains because the court refused to give certain requested instructions.

The particular complaint is that the court erred in refusing to give requested instruction No. 1 on circumstantial evidence. This court has repeatedly held that it is only in those cases where the evidence is wholly circumstantial that the court must give the instruction. The other requested instructions were either given in substance by the court, or failed to correctly state the law.

The court has carefully examined the record and finds no substantial error. The evidence supports the verdict of the jury.

For the reasons stated, the cause is affirmed.

EDWARDS, J., concurs. DAVENPORT, P. J., absent, not participating.