RALPH J. HUTCHMAN v. STATE.

No. A-9029.  March 12, 1937.
(66 Pac. [2d] 99.)

118

Jess L. Ballard, O. H. Searcy, Jno. M. Goldesberry, and Gerald B. Klein, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Frank L. Haymes, Co. Atty., and Edward H. Brady, Asst. Co. Atty., for the State.

BAREFOOT, J. Plaintiff in error, hereinafter referred to as defendant, was jointly charged by information with E. M. Landrum, county treasurer of Craig county, with the crime of embezzlement. A severance was demanded and granted. E. M. Landrum was first tried, convicted, and sentenced to serve a term of five years in the state penitentiary and pay a fine of $32,086.55. He appealed to this court and his case was affirmed and is reported in Landrum v. State, 60 Okla. Cr. 259, 63 Pac. (2d) 994.

Defendant was then tried, found guilty, and convicted by the jury, who stated that they could not agree on the punishment and requested the court to assess the same. The court assessed punishment at five years in the penitentiary and a fine of $70,173.10. From this judgment and sentence, defendant has appealed.

The first assignment of error is:

"The trial court erred in its refusal and failure to sustain the defendant's demurrer to the information."

This was the first error considered in the Landrum Case by Special Judge Gibson, and was decided adversely to the contention of the defendant.

We have carefully examined that case and the authorities cited, both by the defendant and the state, in their briefs in this case, and we see no reason why the court should now change its views upon this proposition. The information is quoted there and for brevity will not be repeated here. It charges the offense of embezzlement under section 7761, Okla. Stats. 1931 (19 Okla. St. Ann. § 641), which is also quoted in full in the Landrum Case. This is a special statute, enacted by the Legislature, and designed to reach public officials who hold or divert public funds and securities, or funds held by such officers offi-

cially belonging to private individuals or to firms or corporations in violation of a public trust and against those who shall advise, aid, or assist in any manner or knowingly participate in such action.

The information in this case, among other things, alleged that the defendant, E. M. Landrum, was charged and intrusted with the "collection, receipt, safe-keeping, transfer, and disbursement of all public money belonging to the county of Craig and the state of Oklahoma, and to divers persons, firms, and corporations, their names being unknown, and of all other funds, property, bonds, securities, assets, or effects of any kind received, controlled, or held by him by virtue of his said office as such county treasurer, and which public money and other funds, property, bonds, securities, assets, and effects were received and held by him for said county of Craig and state of Oklahoma, and municipal subdivisions of said county and divers persons, firms, and corporations their names being unknown." The information further charged:

"That the defendant, E. M. Landrum and Ralph J. Hutchman, while acting together, embezzled a part of said public money, bonds, etc., the sum of and to the amount of $35,086.55, good and lawful money of the United States of America, a more particular description is as follows, to wit: (a specific description of the property and the value thereof and the municipalities owning the same are stated therein) and other public money, funds, property, bonds, securities, assets, and effects, a further description being unknown and the value thereof being unknown. * * *"

It will thus be seen that the information charges the names of the municipalities whose bonds the county treasurer held and the value thereof and then charges that the defendants Ralph J. Hutchman and E. M. Landrum then and there, acting together willfully, unlawfully, wrong-

fully, and feloniously, did convert and appropriate to their own benefit and to a use and purpose not in the lawful execution of the aforesaid trust of him the said E. M. Landrum, county treasurer of Craig county, Okla., a part of said public money, etc.

While under the general embezzlement statute it is generally stated to be the rule that it is necessary to state the name of the party who is the owner of the property, yet a distinction is made where public officials hold this property as public officers and where special statutes exist requiring that certain funds be deposited with them as public officers. The authorities of this state and others clearly make this distinction. Davenport v. State, 20 Okla. Cr. 253, 202 Pac. 18; State v. Harris et al., 47 Okla. Cr. 344, 288 Pac. 385; State v. Bunch, 23 Okla. Cr. 388, 214 Pac. 1093; Hays v. State, 22 Okla. Cr. 99, 210 Pac. 728.

The above cases review the statute in question and hold that an information substantially in the wording of the statute will be upheld. This is a statute specific in its nature and not a part of the General Crime Code.

Counsel for defendant, in their reply brief, say, "The statute expressly so provides, for it says: 'If any person shall advise, aid or in any manner knowingly participate * * *', which would not only indicate but expressly provides that such person must participate in the unlawful acts of the officer 'knowingly'. This allegation is not in the information. Nowhere in the information does it allege or charge that the defendant knowingly participated in any of the alleged unlawful acts, or that he knowingly aided or abetted the county treasurer in any unlawful act," and contend that it was necessary for the information to allege that the act was knowingly done or that he know-

ingly aided or abetted therein. In the first place, it is alleged in the information in the first part thereof "* * * that the defendants, E. M. Landrum and Ralph J. Hutchman, in the county and state aforesaid, did knowingly, willfully, unlawfully, wrongfully and feloniously commit the crime of embezzlement." In the charging part of the information, it is alleged that the defendants "willfully, unlawfully, wrongfully, and feloniously converted and appropriated to their own use and benefit" leaving out the word "knowingly" in the charging part of the information.

We think that by alleging that the defendant willfully committed the act is the same as charging that he knowingly committed the act. These words are used interchangeably and both convey the same meaning.

In the case of State v. Rickenberg, 58 Utah, 270, 198 Pac. 767, 768, the court says:

"In support of its contention appellant insists that the information states facts sufficient to constitute the offense defined in the statute above quoted; that the word 'willfully' is of similar import as the word 'knowingly,' and is the same in substance and effect.

"Many authorities are cited in support of this contention. See especially Ex parte Cowden, 74 Tex. Cr. R. 449, 168 S. W. 539; State v. Muller, 80 Wash. 368, 141 Pac. 910; Fry v. Hubner, 35 Ore. 184, 57 Pac. 420.

"The following excerpts from Words and Phrases, which are supported by numerous cases, illustrate the almost universal trend of judicial opinion. We quote from volume 8 [First Series], pp. 7474 and 7475:

" ' "Willfully" is equivalent to "knowingly." ' '

" 'The term "willfully" implies that the act is done knowingly.'

" 'The word "willfully" implies, on the part of the wrongdoer, knowledge, and a purpose to do the wrongful act.'

" ' "Willfully," as used when saying that an act was willfully done, implies that the act was done by design; done for a set purpose; and it would follow that it was knowingly done.'

" ' "Willfully," as used in connection with an act forbidden by law, means that the act must be done knowingly or intentionally, and that the act was committed with knowledge, and that the will consented to, designed, and directed the act.'

" 'In common parlance "willfully" is used in the sense of "knowingly," as distinguished from "accidental" or "involuntary." '

" 'A "willful failure" to comply with the provisions of the mine law means that there must have been some knowledge that the party was violating it; some knowledge which should have induced him not to do what he did do; some knowledge of the fact.'

" 'An indictment for perjury which charged that the defendant "feloniously, willfully and corruptly did depose," etc., but omitted the word "knowingly," is not bad on account of the omission of such word, though it is used in the statute.'

" 'The word "willfully" as used in the statute punishing perjury, the same being "a false statement willfully made," is synonymous with "knowingly." '

"Many other pertinent paragraphs might be quoted from the pages referred to.

"In the Second Series of Words and Phrases, vol. 4, at page 1304, we find the following:

" 'The word "willfully" implies the doing of an act knowingly, and with stubborn purpose.' 'A "willful act" is one that is done knowingly and purposely.'

"See other paragraphs in the same connection.

"As before stated, these paragraphs seem to be supported by abundant authority cited in connection therewith, many of which cases we have carefully examined and find that they faithfully support the text.

"In our view of the law, both from the standpoint of reason and authority, the question is hardly debatable. To say that a thing can be willfully done without knowing it is, on its face, paradoxical, and manifestly contradictory and untenable."

See, also, Joyce on Indictments, p. 374, § 338.

From the above statement, it will be seen that there is no conflict between the Oklahoma cases as pointed out in defendant's brief. In addition to this, the court in instruction No. 8, in this case, instructed the jury "* * * that any person who shall advise, aid or in any manner knowingly participate in the conversion, or using by way of investment, or loaning the public funds held by any public officer by virtue of his said office, is guilty of the same crime as the officer."

We do not think the information is duplicitous as contended by the defendant in that it charged two offenses against defendant. This question was settled in the Landrum Case.

The third and fourth assignments of error are that the court erred in overruling defendant's demurrer to the evidence, and that the jury was not warranted in finding the defendant guilty.

The facts in this case show that one E. M. Landrum became county treasurer of Craig county in January, 1931, and remained as such treasurer until the 14th day of January, 1935. He at that time resigned. An auditor representing a bonding company, who was making a bond for

his successor, began an audit of the books of the county treasurer's office and upon finding certain discrepancies, and bonds missing, informed E. M. Landrum, and was told by him that the defendant Ralph J. Hutchman, a bond broker in Tulsa, had the bonds, giving to the auditor a list of the bonds. The defendant was located in Oklahoma City and came with the agents of the bonding company to Tulsa. There he met the county commissioners of Craig county, the sheriff, and the assistant county attorney, and others, and in their presence defendant stated that he had received the bonds belonging to Craig county, Okla., from E. M. Landrum, the county treasurer, at various times, beginning about a year and a half before that time; that he had sold the bonds, and if given time would pay Craig county for the same; that certain bonds belonging to Craig county were found in locked boxes in banks in Tulsa, belonging to the defendant; that defendant directed where said bonds could be found. These he voluntarily turned to the bonding company. The evidence further shows that the defendant, on different occasions, had sold bonds belonging to Craig county to the city treasurer of Alva, Woods county, the county treasurer of Woodward county, Dr. L. D. Bagby, and Dr. C. S. Near, of Vinita, and others. The evidence showed that for the bond sold to the county treasurer of Woodward county, a check for $10,090 was made payable to Hutchman and Rogers. The defendant received the same, and nothing in the record shows that this money was ever returned to Craig county. The evidence further showed various checks issued to the defendant by the county treasurer, and the record does not disclose that money or anything of value was ever received therefor. The evidence further shows that the sinking fund of Craig county and the school district sinking fund of said county had a shortage of approximately

$36,896.55 by reason of the loss of bonds and securities. The record shows many sales of bonds and exchange of bonds by the defendant belonging to Craig county. The defendant did not take the witness stand in his own behalf, and no explanation was offered as to what he had done with the money received from the sale of the bonds of Craig county and especially the money received from the sale of the bonds to the county treasurer of Woodward county. It is the contention of defendant that no fraudulent conspiracy was shown to exist between defendant and E. M. Landrum, county treasurer of Craig county.

Upon the question of fraudulent conspiracy, this court, in construing section 7761, the section under which defendant was prosecuted, has held in the case of Cottrell v. State, 52 Okla. Cr. 375, 5 Pac. (2d) 178, that "the offense consists in the violation of the law, and not the intent or motive by which the public officer is actuated." See, also, Harris v. State, 47 Okla. Cr. 344, 288 Pac. 385; State v. Trolson, 21 Nev. 419, 32 Pac. 930.

As to the contention of the defendant that the evidence did not show that he and Landrum, the county treasurer, "were acting together" and that no conspiracy was shown, it may be stated that the evidence did not show that they were present together and agreed as to what action should be taken as to the receiving and disposition of the bonds, but as a matter of fact the record discloses that the bonds were received by the defendant over a period of a year and a half; that they were received in Craig county; that they were sent to banks with the direction that the defendant be permitted to conduct the sale and exchange of the same; that these bonds belonging to the county were disposed of by the defendant; that often checks were made payable to him; and there was no

accounting to Craig county for the proceeds of the sale of many of the said bonds.

The contention of defendant, in his reply brief, that a distinction should be made as to a person who aids, abets, and knowingly participates with the officer charged by law with the safe-keeping of public funds and the officer himself who participates in the embezzlement of public funds was carefully considered by this court in the case of State v. Harris, supra. Under our statute, all persons concerned in the commission of crime, whether it be felony or misdemeanor and whether they directly committed the act constituting the offense or aided or abetted in its commission though not present, are principals, and section 2574, C. O. S. 1921 (22 Okla. St. Ann. § 432), provides that all distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present at the time of the commission of the crime, are principals. The evidence here shows a concerted action, or acting together, by the country treasurer and the defendant. There can be no question that under the statute the defendant aided, abetted, and assisted the county treasurer of Craig county in the sale and disposal of bonds which had come into his hands as a public official for safe-keeping. Not only does the evidence show this, but it shows the proceeds of said bonds went into the hands of defendant and the record does not disclose that these funds were ever returned to the county.

We think that the evidence clearly shows that the defendant participated in the conversion and appropriation of the proceeds of the bonds of Craig county.

The courts of this country have often held that it is not necessary that a conspiracy be proved by direct testimony, in fact, conspiracies are seldom susceptible to such proof. It is often proved by circumstances. We call attention to the case of Mathews v. State, 19 Okla. Cr. 153, 198 Pac. 112, 117, wherein the court says:

"A conspiracy, leading up to the commission of the crime charged, need not be established by direct evidence, but may and generally must be proved by a number of independent acts, conditions, and circumstances. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful common purpose.

"It is not necessary to prove that the conspirators came together and actually agreed to pursue their purpose by common means, one performing one part and another another. If one concurs in a conspiracy, no proof of an agreement to concur is necessary to make him guilty. It is not even necessary that a person, to be criminally liable, should be acquainted with the others engaged in the conspiracy, though to hold one liable as a participant it must be shown that he did some act or made some agreement showing his intention to commit the crime; and one who joins the conspiracy after its formation is liable as a conspirator just as much as those with whom the conspiracy originated. 1 R. C. L. 133; 5 R. C. L. 1088, 1063; section 2104, R. L. 1910 [21 Okla. St. Ann. § 172]; Spies v. People, 122 Ill. 1-12, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320; Robinson v. U. S., 172 F. 105, 96 C. C. A. 307; U. S. v. Newton (D.C.) 52 F. 275; Hyde v. Shine, 199 U. S. 62, 25 S. Ct. 760, 50 L. Ed. 90; Pettibone v. Nichols, 203 U. S. 192, 27 S. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047."

The testimony in this case shows such "acting together" upon the part of the defendant and the county treasurer that a conspiracy existed between them for the

purpose of selling bonds of the county for the purpose of defrauding said county. Under the law, where one is charged with crime, evidence is admissible to show a conspiracy to commit the crime charged although the conspiracy is not charged in the information. Mathews v. State, supra; Thomas v. State, 40 Okla. Cr. 204, 267 Pac. 1040.

It is next contended by defendant that the court erred in giving instruction No. 7, which is as follows:

"Therefore, you are instructed by the court that if you believe from the evidence submitted by the court for your consideration, beyond a reasonable doubt, that the defendant, E. M. Landrum, on or about the first day of July, 1934, was the duly elected, qualified, and acting county treasurer of Craig county, state of Oklahoma, and as such county treasurer was charged and entrusted with the collection, receipt, safe-keeping, transfer and disbursement of the public money belonging to said county of Craig, state of Oklahoma, and of divers persons, firms and corporations, and of all other funds, property, bonds, securities, assets or effects controlled or held by him, by virtue of his said office of county treasurer of said county of Craig, state of Oklahoma, for safe-keeping, transferring and disbursement and the said defendant, E. M. Landrum, was entrusted, charged with, and did, in said Craig county, state of Oklahoma, on or about the first day of July, 1934, receive, have and hold in his possession and under his control as county treasurer, and for the purpose mentioned in the information, certain public money, funds, property, bonds, securities, assets or effects, of any kind, as alleged in said information, and that the said defendants E. M. Landrum and Ralph J. Hutchman, acting together, willfully, unlawfully, wrongfully, and feloniously converted and appropriated to their own use and benefit, and to a use and purpose not in the lawful execution of the trust of him the said E. M. Landrum, as county treasurer of Craig county, state of Oklahoma, sums of money, to wit:

"$1,048.67 City of Sapulpa Bonds of 1922, due 1942,
"$9,000.00 Muskogee Bd and Ed Bonds due serially, 5-20-42 to 44,
"$2,037.88 Tulsa Park Improvement Bonds,
"$9,000.00 City of Sapulpa Bonds of 1922, due 1942,
"$7,000.00 Tulsa County Road Bonds, due 1942,
"$7,000.00 Town of Big Heart, (Barnsdall) W. W. Bonds, due 1944,
"or any other public money, funds, property, bonds, securities, assets or effects, of any kind, as alleged in said information or any part thereof in excess of twenty dollars in value, then it would be your duty to convict the defendant, Ralph J. Hutchman, as charged in the information, and so say by your verdict. Unless you should so find, it will be your duty to acquit the defendant."

We see no error in the giving of this instruction. Defendant contends that the instruction does not contain the words "fraudulent appropriation" and does not define the terms "willfully," "unlawfully," "wrongfully," and "feloniously." In view of what has already been said, it will be seen that under the statute it is not necessary to have a fraudulent appropriation. The misappropriation of the funds intrusted to the care of the public official is all that is necessary. After he receives these funds, in the manner provided by law, it becomes his duty, under the law, to see that they are safely protected. The above instruction is practically in the words of the information and the statute. We have examined the case of Brock v. State, 6 Okla. Cr. 23, 115 Pac. 1026, and other cases cited by defendant, and we do not think the instructions given in that case are applicable here. The instructions as a whole fully informed the jury as to all the elements necessary to prove the crime of embezzlement under the provisions of the statute under which defendant was prosecuted.

It is next contended by defendant that the court erred in permitting incompetent, irrelevant, and immaterial testimony and this is based upon the fact that the court permitted to be introduced an audit made by the state examiner and inspector's office of the county treasurer's office of Craig county. This audit was made in April, 1935, by an auditor who had been an employee of the state examiner and inspector's office as general supervisor of all the examinations of county officers since 1927. This report was immediately filed in the office of the state examiner and inspector, and then withdrawn and filed in the office of the county clerk of Craig county. It was subject to the inspection of defendant or his counsel. This case was not tried until May 31, 1935. The defendant had an opportunity to examine the original books and files in the county treasurer's office, and, if desirable, could have had an auditor examine the same for the purpose of cross-examination.

It would have been impossible for the jury to have intelligently passed on the books and records in this case without having an auditor who had examined them and a report compiled as to what they contained. It is true that mere conclusions of such officer, not based on his official record, are inadmissible, but his official report and records in so far as they pertain to the issues involved may be introduced as primary evidence, subject to explanation or impeachment.

Extracts from many of the original books were introduced in this case in addition to the auditor's report. We think that the facts come clearly within the rule as announced in the case of Hays v. State, 22 Okla. Cr. 99, 210 Pac. 728, 732, wherein the court said:

"With the contention of defendant that the investigations, reports, and findings of this examiner and inspector were not the best evidence we cannot agree. This was a state officer, charged with the duty of examining the books and accounts of officers or custodians of state or county funds and making written reports thereof, to be filed and kept in his office, for the use of the executive department and others. Ample provisions are made to facilitate such examinations, so that the findings and reports will correctly state the facts. This officer, in our opinion, comes within the purview of section 5115, R. L. 1910 [12 Okla. St. Ann. § 502], as follows:

" 'The books and records required by law to be kept by any county judge, county clerk, county treasurer, register of deeds, clerk of the district court, justice of the peace, police judge or other public officers, may be received in evidence in any court.'

"This rule is a reasonable one, well calculated to meet the ends of justice. In this instance it would have been unreasonable to expect the jury to inspect, audit, and reach correct conclusions from the introduction of a great multitude of book entries, reports, receipts, and complicated documentary evidence. The average jury would be lost in a maze of complicated facts and figures, from which they might or might not make correct deductions. The state examiner and inspector is a disinterested, skilled accountant, with facilities for arriving at correct results, and his official written reports, it seems to us, under this statute should be received as primary evidence for what they might be worth. Of course, the correctness of his deductions may be challenged on cross-examination or by direct evidence to the contrary. Bradshaw v. State [18 Okla. Cr. 619] 197 Pac. 715; 22 Corpus Juris, 'Evidence,' p. 615."

It is next contended that the court erred in receiving the verdict of the jury, and in rendering judgment and pronouncing sentence thereon for the reason that the jury found the defendant "guilty as charged in the informa-

tion, but cannot agree on his punishment and asked the court to declare and assess his punishment," it being contended that under section 7761, O. S. 1931 (19 Okla. St. Ann. § 641), "It is incumbent upon a jury, and upon a jury alone, finding a person accused thereunder to be guilty, to also find and state in the verdict the amount of the embezzlement; and that such is a necessary and requisite condition precedent before the court can acquire jurisdiction to render judgment and pronounce sentence based upon the jury's verdict."

In this case, the record shows that the form of verdict prepared by the court was submitted to counsel for defendant and by him declared to be satisfactory. The court instructed the jury, "in case you should find the defendant guilty but are unable to agree upon the punishment then you may so say in the verdict, and the court will assess and declare the punishment." This instruction is in compliance with the statute, section 3108, O. S. 1931 (22 Okla. St. Ann. § 927), which reads:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

The defendant did not except to the instruction, nor did he request that the jury be required to assess the punishment. After the verdict of guilty was found, it then became the duty of the court, under the statute, to determine the amount of the fine, which under the law constitutes a civil judgment, which is a lien upon the property of the defendant. The record does not disclose just how the court arrived at this amount.

Counsel for defendant, in their briefs, cite the case of Hogoboom v. State, 120 Neb. 525, 234 N. W. 422, 79

A. L. R. 1171, in support of their contention. In the report of this case, in 79 A. L. R., there is an annotation beginning at page 1181 upon this identical point and the author of the annotation says:

"There is a substantial conflict of opinion on the subject of this annotation, both as between the several jurisdictions and within the jurisdictions themselves, though the greater weight thereof is to the effect that a specific finding of value is not essential to a valid and sufficient verdict."

On the same page it is further said:

"In the larger number of cases in which the question has arisen, it has been held that a general verdict such as 'guilty', 'guilty as charged in the indictment', 'guilty of grand larceny,' 'guilty in the second degree', etc., is sufficient, without a finding of the value of the stolen property, to support a conviction of larceny or embezzlement, since where, under proper instructions from the trial court, the jury has found such general verdict, it can, by reference to the indictment and instructions, be made certain as to what value the jury must have found. These cases base their results on such principle even though the degree of the crime or the place and form of punishment depend on the value of the property." Citing cases from many states.

It will be noted that the cases supporting the minority view are cases from the Supreme Court of Illinois and Iowa which are referred to in defendant's brief. It will also be noted that the Nebraska decision above referred to comes under the designation of those cases which have a special statute requiring the jury to ascertain and declare in their verdict the value of the property stolen, embezzled, or falsely obtained. Under a statute such as this, it is held to be a mandatory requirement to the validity and sufficiency of the verdict that the jury as-

certain and declare the value of the stolen property in their finding when the degree of the crime or the range of punishment therefor depends on the value.

On page 1185 the annotator further states:

"So, where the statute makes cattle theft or larceny from the person, or larceny of an automobile, or embezzlement by public officers, and the like, a crime of a certain degree without regard to the value of the subject of the larceny or embezzlement, there need be no finding of value."

In the case of Sims v. State, 54 Fla. 100, 44 So. 737, 739, it is held to be unnecessary for the jury to ascertain the value of property embezzled by a public officer, since the guilt or innocence of such class of persons was not dependent on the particular amount which the property was worth, and the fact that the statutory punishment was "a fine equal to the value of the money," in addition to imprisonment, was not a ground of complaint by the defendant, since he could not be harmed by the failure of the verdict to require him to pay a fine in addition to the sentence of imprisonment.

In the companion case of Landrum v. State, supra, the court assessed a fine of $32,086.55. After careful consideration, we have decided to reduce the fine in this case to the same amount. It is no part of the sentence to be served, but is only a judgment and lien upon the property of the defendant.

We have carefully examined the record and able briefs filed in this case and find that the defendant has had a fair and impartial trial and the judgment of the district court of Craig county is therefore modified and affirmed as above stated.

DAVENPORT, P. J., and DOYLE, J., concur.