# RAY THOMAS et al. v. STATE.

No. A-6193. Opinion Filed June 2, 1928.
(267 Pac. 1040.)

Nowlin, Spielman & Thomas, for plaintiffs in error.

Edwin Dabney, Atty Gen., Smith C. Matson, Asst. Atty. Gen., and W. P. Morrison, Co. Atty., for the State.

EDWARDS, J. The plaintiffs in error, hereinafter called defendants, were convicted in the district court of Canadian county on a charge of subornation of perjury, and were each sentenced to serve a term of five years in the state penitentiary.

The defendants, with their father, W. F. Thomas, and two brothers, Sam Thomas and Ernest Thomas, were jointly charged. A serverance was granted to some of the defendants. Ernest Thomas was tried first and was convicted, and appealed to this court, and the case was reversed. Thomas v. State, 36 Okla. Cr. 209, 253 P. 514. The case against W. F. Thomas was dismissed. Sam Thomas was acquitted. The defendants here were tried last.

The case arose in this manner. In December, 1924, certain officers made a search of the premises of W. F. Thomas where he and his four sons just named resided. They found a five-gallon jug of whisky buried on the premises, and a charge of unlawful possession was filed in the county court against all the Thomases named, except Sam Thomas. That case was tried in February, 1925; the state presented its evidence; the defendant then produced one J. O. Dorsey, who testified, in substance, that about two weeks before this jug of whisky was found he and a boy named Smith found a five-gallon jug of whisky about a half mile from the Thomas farm,

and moved it about three-quarters of a mile, and buried it about one-quarter of a mile northeast of the Thomas house, he supposed where the officers found it. This charge of subornation of perjury was then filed against all of the Thomases alleging they had procured Dorsey to testify falsely in the county court liquor case as just stated. The two defendants here were tried together, and from their conviction prosecute this appeal.

It is the theory of the state that the Thomases conspired together to frame a defense of the liquor charge by procuring some one to testify falsely to the possession of the five-gallon jug of whisky found by the officers, or to raise a reasonable doubt of the possession of it by the Thomases, and thus bring about an acquittal. A brief review of the evidence of the state is that Wesley Wright, Ted Huntley, and Elmer Hill were farm hands living on the Thomas place at the time the whisky was found. They all testified for the state in this subornation case that the Thomases offered Ted Huntley $25 and to pay his fine if he would claim the whisky found by the officers. Huntley refused, and the proposition was then made to Elmer Hill. After several conversations, Hill agreed to claim the whisky, and the Thomases were to pay him $100 and his fine. After making this agreement two of the Thomas boys took Hill on two occasions to the office of their attorneys at Oklahoma City, and the plans were laid before these attorneys, and discussed by them with Hill. (These attorneys are not the counsel who appear for defendants in this appeal.) Pursuant to the arrangement with Hill a few hours before the liquor case was called for trial, the balance of the money to be paid Hill was paid by the Thomases, but Hill either got "cold feet" or became intoxicated, and failed to appear to testify, as he had agreed. Then Sam Thomas, who was not charged in the liquor case, and Dorsey went out to hunt Hill. Not being able

to find him, and the trial being in progress, Dorsey agreed with Sam Thomas to take Hill's place and testify as Hill had agreed. He was then called as a witness, and testified in substance as hereinbefore stated.

At the trial of this case, Dorsey testified for the state in substance and effect that all his testimony in the county court liquor case was false. There was also some circumstantial evidence of its falsity, as well as the testimony of Hill, Wright, and Huntley of the attempt to procure them to give the testimony in substance as testified to by Dorsey. The defendants did not take the stand nor offer any testimony, nor make any defense, except technical objections.

Numerous assignments of error are argued, all of which have had the attention of the court, and some of which will be separately set out in disposing of the questions presented.

It is first argued that the information is insufficient, in that it does not appear by allegation in either general terms or specific terms that the county court had jurisdiction of the case in which the alleged false testimony was given.

In is not necessary to set out the lengthy allegations of the information. It alleges that defendants procured Dorsey to commit perjury in a case on trial in the county court of Canadian county wherein they were charged with having possession of intoxicating liquor, and that Dorsey, after being duly sworn as a witness in said court, falsely and corruptly testified "in substance" that he transported the jug of whisky which the said Thomases were charged with the possession of, and had buried the same at the point where it was found by the officers on the premises of the said Thomases in Canadian county, then alleging that the evidence was

material, was false, and known by the Thomases to be false, and that Dorsey so testified falsely.

The rule of strict construction in criminal law and criminal cases is not in force in Oklahoma. Price v. State, 9 Okla. Cr. 359, 131 P. 1102; State v. Underwood, 17 Okla. Cr. 443, 190 P. 281.

An indictment or information for subornation of perjury is sufficiently pleaded where the subject of the controversy in which the offense was committed is alleged, and in what court or before whom the oath alleged to be false was taken. Section 2570, Comp. St. 1921.

It is said that the averments necessary to charge a criminal offense are of two kinds, one setting out the foundation for the conviction of the offense and one pleading the offense itself. The former is generally called the inducement, and may be pleaded in general terms. It need not be made by direct charge or in detail. A part of this inducement in a perjury case is the fact of an issue before some tribunal having jurisdiction. These things are not the charge against the accused, but the foundation for the charge. The charge is the false testimony. 3 Bishop's New Criminal Procedure, 2d Ed. §§ 904, 905; Williams v. State, 14 Okla. Cr. 100, 167 P. 763. There is no material difference in the application of this rule where the charge is subornation of perjury. The recitals in the matters of inducement in the information here sufficiently show that the county court of Canadian county had jurisdiction of the proceedings pending in which the alleged false testimony was given, and it sufficiently conforms to the statutory requirement.

It is next argued that the evidence is insufficient to show that Dorsey testified as alleged. The information charges that Dorsey testified he conveyed the jug of

whisky which the Thomases were charged with having the unlawful possession of, and buried it at the point where found by the officers on the premises of the Thomases. Dorsey was somewhat cautious in his testimony. When asked if he had seen the jug exhibited, he answered "I think I have seen that jug." Asked if it was the jug he buried, he answered, "I presume it is." Asked to positively identify it, he stated he could not positively do so, there were too many jugs alike. He testified, however, that he found the jug about a half mile north of the Thomas place. He weakened that somewhat by saying he could not tell just how far it was, nor the exact direction, but that he and Smith found it, carried it three-quarters of a mile, and buried it a quarter of a mile northeast of the house; that he had heard the testimony of the officers, and supposed the officers found it where he buried it; that he was in the courtroom, heard the officers testify where they found the whisky; that he went to the place where he buried it and it was gone; and that, after the Thomases were arrested, he told Sam Thomas he buried some there. Despite his use of the words "think" and "presume," the plain import and meaning of this testimony is that Dorsey found the whisky, carried it about three-quarters of a mile, and buried it about one-quarter of a mile northeast of the Thomas house; that he heard the officers testify where they found it, and they found it where he buried it. All the testimony of this witness in the liquor case was introduced in evidence in support of this charge of subornation, and it seems clear to us that "in substance" the testimony of the witness is as alleged.

On a trial for perjury, it is not necessary that the proof show defendant made literally the statements alleged, but to sustain the charge it is necessary to prove only that he testified in the substance of the language alleged in the prior judicial investigation. McLaren v.

State, 4 Ga. App. 643, 62 S. E. 138; Taylor v. State, 48 Ala. 157; People v. Burroughs (N. Y.) 1 Parker Cr. R. 211; Com. v. Terry, 114 Mass. 263; Wheeler v. People, 63 Colo. 209, 165 P. 257.

In the latter case the court held:

"In a prosecution for perjury, there was no fatal variance between an information, charging that defendant testified, 'in substance and effect,' that he did not know the defendants then on trial were among those who went with him in his wagon to the point near where an assault with intent to murder was committed, and the transcript of defendant's testimony, from which it appeared that he attempted to convey the impression that such defendants might or might not have been with him at that time, but that he was unable to state positively either way."

Counsel for defendant next contend that perjury cannot be established by the uncorroborated testimony of the perjurer, and in a criminal case, where subornation of perjury is charged, the proof of the perjury must conform to the requirements of the quantitative rule as announced by this court in perjury cases. Metcalf v. State, 8 Okla. Cr. 605, 129 P. 675, 44 L. R. A. (N. S.) 513; Goltry v. State, 24 Okla. Cr. 127, 216 P. 485; Shoemaker v. State, 29 Okla. Cr. 184, 233 P. 489; Wright v. State, 30 Okla. Cr. 425, 236 P. 633.

Counsel concede that, where the charge is subornation of perjury, the subornation may be established by the ordinary rules of evidence; that is, by the testimony of a witness without corroboration, but that the perjury upon which the subornation is predicated cannot be established by a single witness, but insist there is no evidence except the testimony of Dorsey that he did not find and bury the jug as he testified in the liquor case. The following cases are cited in support of his contention: Bell v. State, 5 Ga. App. 701, 63 S. E. 860; State

v. Renswick, 85 Minn. 19, 88 N. W. 22; Com. v. Douglass, 5 Metc. (46 Mass.) 241.

This court has not had occasion to pass upon the identical question here presented. The case of Hammer v. U. S. (C. C. A.) 6 F. (2d.) 786, in passing upon this question, holds that the requirement of corroboration in perjury cases has no application in cases of subornation, and cites numerous authorities in support of the rule announced. This case is enlightening, but we think it unnecessary to pass on the question here, for the reason that, if it be conceded that the fact of perjury in a charge of subornation of perjury must be proven with the strictness required where the charge is perjury, there is ample corroboration of the evidence of Dorsey to satisfy this requirement.

The contention is next made that the court admitted incompetent evidence prejudicial to defendant. This assignment is directed to testimony of Huntley, Wright, and Hill that the Thomases attempted to procure Huntley and Hill to claim the whisky found; that, since the information charges that defendants did procure another person, to wit, J. O. Dorsey, to commit perjury, and there is no charge of any conspiracy to procure another person other than Dorsey, evidence of the attempt to procure some person other than Dorsey is not competent as being evidence of an independent offense. The state takes the view: That the conspiracy was to procure some person to testify that he had placed the jug on the Thomas premises where found by the officers, and the attempt to procure Huntley and Hill and the procuring of Dorsey are all pursuant to the common design and purpose. That it was immaterial, so far as the conspiracy was concerned, who was procured to swear falsely to the possession of whisky; and all the evidence made to procure some person is competent, and the acts and declarations of any of the persons in pursuance

of the common design are the act and declaration of all. Ex parte Hayes, 6 Okla. Cr. 321, 118 P. 609. That the the offer to Huntley, the agreement with Hill, and the final agreement and procuring of Dorsey is a part of the common design, and all the evidence along this line admissible. It is not necessary that the conspiracy be charged in the information. Irvin v. State, 11 Okla. Cr. 301, 146 P. 453; Thomas v. State, 34 Okla. Cr. 288, 246 P. 658; Gandy v. State, 34 Okla. Cr. 350, 246 P. 887; Mathews v. State, 19 Okla. Cr. 153, 198 P. 112.

Conspiracy to commit a crime ordinarily is not proven by direct and positive evidence, but generally must be proven by circumstances, and a wide latitude in the examination of witnesses to show a conspiracy to commit a crime is permissible. Crawford v. State, 35 Okla. Cr. 135, 248 P. 880.

Some evidence of a conspiracy is essential, and it is frequently said that slight evidence of collusion is all the law requires to admit evidence of the acts and declarations of a conspirator against his coconspirators. When there is such evidence, though slight, then both the acts and declarations of a coconspirator not upon trial are admissible against a defendant.

The testimony of Dorsey is of an agreement by him with Sam Thomas, who was not on trial, and not charged with the possession of the whisky, to testify as to Dorsey's possession of the jug of whisky involved. The fact that, after making this agreement with Sam Thomas, Dorsey was called by defendants, and testified as he had agreed with Sam, is evidence that Sam Thomas was acting for defendants, and the fact that other of the Thomases had sought to procure Huntley and Hill to testify to the same effect was admissible as tending to prove a common design and purpose, and tended to explain and throw light upon the procuring of Dorsey to give the

testimony he did. The evidence supports the theory that there was a conspiracy to procure some person to commit perjury, and that after different efforts, Dorsey was procured, and did testify as charged. Under this assignment, complaint is also made that the court admitted evidence that a day or so before the finding of the five-gallon jug of whisky on the Thomas place, they had other five-gallon jugs of whisky on said premises. It is insisted that this evidence is of an independent offense, and prejudicial. This evidence was competent as tending to establish the falsity of Dorsey's testimony, and as tending to show the knowledge of defendants of the falsity of his testimony. Underhill, Criminal Evidence (3 Ed.) § 683; Hunter v. State, 3 Okla. Cr. 533, 107 P. 444.

Defendants also argue that, since Sam Thomas was tried and acquitted on a separate trial upon the same charge as these defendants, the law should operate to acquit them. This contention directly conflicts with the provisions of sections 2574 and 2575, Comp. St. 1921. Under these sections all those concerned in the subornation were principals, without regard to whether they were what might be termed accessories or principals, and might be prosecuted, tried, and punished, although the principal be neither prosecuted nor tried, or, if tried, acquitted.

Some complaint is also made of the court's instructions. We have reviewed these instructions carefully, and, while some of the criticism made may be more or less just, yet, taken altogether, they sufficiently state the law applicable and there is no such prejudicial error in any of them as requires a reversal.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.