584 P.2d 1365 (1978)
M.D.G., Appellant,
v.
The STATE of Oklahoma, Appellee.
No. J-77-642.
Court of Criminal Appeals of Oklahoma.
September 26, 1978.
John Dratz, Jr., Asst. Public Defender, Tulsa County, Pat Lucy, Legal Intern, for appellant.
Donald M. Bingham, Asst. Dist. Atty., Tulsa County, for appellee.

*1366 OPINION
CORNISH, Judge:
M.D.G. has appealed to this Court from a determination by the District Court, Tulsa County, that he is a delinquent child. That determination was based on a finding that the boy had committed the offense of Robbery *1367 With Firearms. On appeal, the juvenile contends that the State did not comply with 10 O.S. 1971, § 1109(a), and that the District Court was in error in stating that it was bound by law to place the juvenile in the custody of the Department of Institutions, Social and Rehabilitative Services as a delinquent, rather than dealing with him as a child in need of supervision. We hold that a new adjudicatory hearing must be held on the delinquency petition.
On June 13, 1977, the juvenile was adjudicated as a child in need of supervision. But before any dispositional hearing had been held, a delinquency petition was filed, charging him with participating in the theft of an automobile and the armed robbery of a doughnut shop. The automobile theft charge was subsequently dismissed by the District Court. Since the assignments of error on appeal are procedural, the facts of the robbery are of no consequence and will be omitted.
When he was arrested on the armed robbery charge, the juvenile was handcuffed, placed in a patrol car and taken to the police station. On the way to the station, the arresting officer read the 14-year-old boy his rights at a stop sign. He asked the juvenile if he understood his rights and the juvenile replied that he did. Although the boy's parents had not yet been contacted, the officer questioned him at that time and got some information from him concerning the robbery. The investigator then called the juvenile's father and asked him to come to the police station.
Because of business, Mr. G. was not able to go to the police station for about two and a half hours. When he arrived, the investigator gave him a printed rights waiver and asked him to read it and sign it. Mr. G. did as he was told. The officer then gave Mr. G. and his son an opportunity to talk in private. At this point there is a small conflict in the testimony. The investigating officer testified that he told Mr. G. to explain the rights waiver to the juvenile. Mr. G., on the other hand, said he was not asked to explain the rights waiver and that he did not do so.
After the private conference, the officer asked the juvenile if he would answer some questions. The juvenile replied that he had talked with his attorney while waiting for his father to come to the station and the attorney had told him not to answer any questions unless the attorney was present. The investigating officer then told the juvenile and his father that the attorney's presence was not required. He said that the boy's father had more control over him than the attorney did and that the father could give the boy permission to answer questions. Mr. G. asked the officer if they should wait for the attorney to come, to which the officer replied that he would rather not wait. (At the hearing, the officer testified that he was very busy and could not afford to await the pleasure of defense attorneys.) The investigator then questioned the juvenile, and the statements the juvenile made were used against him at the adjudicatory hearing on the delinquency petition. The juvenile never signed a rights waiver, nor were his rights ever read or explained to him by anyone, except for the brief stop on the way to the police station at the time of his arrest, some four hours before he was questioned.
The juvenile contends on appeal that none of the statements made by him in response to the officer's questioning should have been admitted, because he was not counseled with regard to his rights and was not permitted to wait until his attorney was present. The State argues that it was in technical compliance with 10 O.S. 1971, § 1109,[1] since the juvenile's father was present at the questioning. The State asserts *1368 that the father's presence made the interrogation of the juvenile constitutionally permissible in spite of the child's wish to wait for his attorney to arrive. But clearly, the legislative intent of Section 1109 is to protect a child's constitutional rights, not to subtract from them. Even if a child's parents are present when the child is interrogated, if a question is raised of a voluntary and intelligent waiver of the protection against self-incrimination and the right to counsel, we are still compelled to examine the circumstances surrounding the interrogation, to determine whether or not the child was deprived of his constitutional protections.
In the instant case, we are forced to conclude that the investigating officer acted improperly in questioning the child, and for that reason the statements made by the child should not have been admitted at the adjudicatory hearing. First, it appears that the child's rights were not explained to him in any meaningful way. We do not believe that the reading of the rights in the police car on the way to the police station  several hours before the custodial questioning  can be considered a sufficient explanation of rights to a 14-year-old child. Furthermore, under the facts of this case, this parent did not have the power to waive the child's rights. If the juvenile in this case had insisted on waiting for the attorney to come, then no waiver by the father would have justified immediate questioning.
It also appears as though the investigator intentionally misled the juvenile and his father by telling them that the attorney's presence was not required, and in saying that he did not want to wait for the child's attorney. On the issue of the right to counsel, this case seems to us to be analogous to Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).
In Brewer, the suspect was to be transported from one city to another and he had an attorney in each city. The attorney in the first city made clear to the police that he had instructed the suspect not to talk to anyone until the suspect could confer with the attorney in the destination city and the detectives agreed not to question him. In spite of that agreement, the police  after refusing to let the attorney ride with them  played upon the man's emotions until they succeeded in getting him to admit committing the crime. The United States Supreme Court held that the actions of the police violated the suspect's Sixth Amendment right to counsel. The Court also stated that in waiver questions it is the State which must bear the burden of establishing a waiver. The accused does not have the burden of showing that there was no waiver.
The record in the instant case will not support a finding that the juvenile waived his right to counsel. The record will support a finding that, as in Brewer, the investigating officer intentionally created a situation in which he could question the juvenile without an attorney being present. We therefore hold that the statements elicited from the juvenile were obtained in violation of 10 O.S. 1971, § 1109, and the Sixth Amendment of the United States Constitution.
The juvenile also complains that the District Court was acting under a misapprehension of the law when it made its dispositional order in the instant case. The District Court had adjudicated the child to be both a child in need of supervision and a delinquent, before any dispositional hearing *1369 was held. The juvenile was then on runaway status and a bench warrant issued. Thereafter, the juvenile was charged with the offense of Robbery With Firearms. The State recommended he be placed in the Department's custody as a child in need of supervision. The juvenile's attorney concurred in this recommendation, stating that the juvenile's participation was minimal, his actions more compatible with the category of a child in need of supervision than of a delinquent, and that since he had never had a dispositional hearing as a child in need of supervision, the court would have the authority to make such a placement.
The Court, however, based upon findings of the Referee adjudging the juvenile a delinquent child, held it was bound to follow procedural law and to place the child with the Department of Institutions, Social and Rehabilitative Services, as a juvenile  delinquent, for an indeterminate period, thereby losing jurisdiction of the case. While the District Court's dispositional order was not illegal, we point out that under 10 O.S.Supp. 1977, § 1116(a), the court may make any one of four dispositional orders after adjudicating a child to be delinquent: (1) It may place the child on probation; (2) it may commit the child to the custody of a private institution; (3) it may commit the child to the custody of the Department; or, (4) it may dismiss the petition.
In light of our decision that the statements made by the juvenile to the investigator were inadmissible, we REVERSE and REMAND this case to the District Court, Tulsa County, Juvenile Division, for a new delinquency hearing pertaining to the charge in paragraph one of the delinquency petition, charging the juvenile with Armed Robbery. The charge with regard to paragraph two, charging the juvenile with automobile theft, was properly DISMISSED for lack of evidence.
BUSSEY, P.J., not participating.
BRETT, J., concurs.
NOTES
[1] Since the delinquency hearing, this section has been amended. The changes, however, do not affect the statute as far as this case is concerned. Title 10 Supp. 1977, § 1109(a), reads as follows:

"No information gained by questioning a child nor any evidence subsequently obtained as a result of such information shall be admissible into evidence against the child unless the questioning about any alleged offense by any law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, and not until the child and his parents, or guardian, or other legal custodian shall be fully advised of their constitutional and legal rights, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court if the parties are without sufficient financial means; . .."