James Joseph **DAUGHERTY,** Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–80–554.

Court of Criminal Appeals of Oklahoma.

Feb. 3, 1982.

Rehearing Denied March 4, 1982.

ing upon the Defendant's motive for being at the scene of the homicide in this case and for no other reason whatsoever.

Raymond Burger, Michael Scott Fern, Legal Intern, Burger, Wells, Duckworth & Coyle, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Larry Oakes, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, James Joseph Daugherty, hereafter referred to as defendant, was charged and convicted in the District Court of Pottawatomie County, Case No. CRF–79–38, of Murder in the First Degree, and sentenced to life imprisonment. Because the defendant was fifteen (15) years of age at the time of the commission of the crime, the State of Oklahoma moved to have him certified to stand trial as an adult. The motion was granted by the district court after a hearing, and we affirmed the certification on appeal. See, *J.J.D. v. State*, 601 P.2d 111 (Okl.Cr.1979).

The facts are that on January 4, 1979, at approximately 2 a. m., Ivan Richard Witty was shot while asleep in the bedroom of his Shawnee home. His wife, Nancy, asleep next to him, was awakened by the noise of the gunfire and proceeded with her daughter, Kelle, across the street to a neighbor's, seeking help. Neighbor Burnham, a nurse trainee, hurried over to the Witty residence to assist the victim. The deceased was subsequently transported to a local Shawnee hospital, where he died of a gunshot wound to the back. Prior to the homicide, it was learned that the defendant had bragged to several classmates that he intended to take the life of the deceased. After the homicide, the defendant proclaimed himself responsible for the killing and detailed the circumstances to friends and classmates. It was also learned that the defendant was seen to be in possession of the murder weapon prior to the killing of Witty, and that the two shots fired from the .38 caliber pistol were intended for Witty and for his wife, Nancy. The pistol was allegedly fired by Eric Jones, who had accompanied the defendant to the Witty residence on the night of the homicide.

In one of several assignments of error, the defendant contends that his conviction cannot stand since his co-principal, Jones, was convicted of First Degree Manslaughter and not murder.

■ By virtue of 22 O.S.1971, § 432, distinctions between an accessory before the fact and a principal, and between principals of different degrees have been abrogated. All persons whether they directly commit the felony offense or aid and abet in its commission, are to be prosecuted as principals.

Title 22 O.S.1971, § 433, provides that an accessory to the commission of a felony may be prosecuted, tried and punished, though the principal felon be neither prosecuted nor tried, and though the principal may have been acquitted. As noted and held in *Thomas v. State*, 40 Okl.Cr. 204, 267 P. 1040 (1928):

> Defendants also argue that, since Sam Thomas was tried and acquitted on a separate trial upon the same charges as these defendants, the law should operate to acquit them. This contention directly conflicts with the provisions of sections 2574 and 2575, Comp.St. 1921. [22 O.S. 1971, §§ 432, 433] Under these sections all those concerned in the [felony] were principals, without regard to whether they were what might be termed accessories or principals, and might be prosecuted, tried, and punished, although the principal be neither prosecuted nor tried, or, if tried, acquitted.

The alleged fact that co-principal Jones, and not the defendant, actually fired the pistol, does not diminish the criminal responsibility of the defendant. The outcome and the result of co-principal Jones' trial has no application to the case at bar since both of these individuals were perpetrators of the crime and were to be tried as principals. See, *Herndon v. State*, 552 P.2d 707 (Okl.Cr. 1976); *Neal v. State*, 506 P.2d 936 (Okl.Cr. 1976); *Cody v. State*, 361 P.2d 307 (Okl.Cr. 1961); *Chamblee v. State*, 48 Okl.Cr. 337, 291 P. 143 (1930); *Pearce v. Territory*, 11 Okl. 438, 68 P. 504 (1902). The rule of law

is the same even if a co-principal is convicted of a lesser charge.

In another assignment of error, the defendant argues that he was denied an impartial jury due to statements by prospective jurors on voir dire examination. We disagree.

The fact that a juror or jurors indicate prejudgment of the case is not an uncommon occurrence. As the record reveals, several jurors voiced such an opinion and each was excused for cause. Since none of the information possessed by these jurors was revealed to the jury panel and, as previously stated, each was excused for cause, this Court fails to see how the defendant was prejudiced. See, *Stott v. State*, 538 P.2d 1061 (Okl.Cr.1975); *Maxey v. State*, 526 P.2d 951 (Okl.Cr.1974).

■ The defendant's next assertion, that his statements to police officers were not knowing, voluntarily and intelligently made in accordance with applicable law, is likewise deemed to be without merit. The record shows that the defendant and his mother, Betty S. Daugherty, were both appropriately advised of their legal and constitutional rights and executed a valid waiver thereof. Compliance with 10 O.S.Supp. 1980, § 1109, as well as protection afforded a juvenile under the guidelines set forth in the case of *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966), and subsequent court decisions were given to defendant. The record does not reflect that any type of coercion or pressure was put upon the defendant or his mother, nor that Mrs. Daugherty was not a proper person to provide effective guidance and advice at the time of the interview with police officers. The defendant simply has not demonstrated that his statements to police officers were improperly obtained, and the admission of these statements into evidence at trial was not error.

The next contention presented concerns the admission into evidence of the defendant's statement in its entirety wherein several comments by the defendant's mother are contained. In support of his argument, the defendant cites *Pebworth v. State*, 88 Okl.Cr. 97, 199 P.2d 621 (1948), and *Leeth v. State*, 94 Okl.Cr. 61, 230 P.2d 942 (1952), which are both distinguished from the matter at bar. In *Pebworth*, a prosecutor went outside of the record and referred to a case where a man had been killed. The defendant, *Pebworth*, was on trial for driving an automobile while under the influence of intoxicating liquor. In *Leeth*, a very damaging, prejudicial and inadmissible wire recording was allowed into evidence and played for the jury. In the instant case, we have a contention raised by the defendant that comments of Mrs. Daugherty, who was present during the interrogation of her son by police officers, should have been deleted from the statement before it was admitted into evidence. We have reviewed carefully these comments of the mother as well as the interrogating police officers and are of the opinion that they were neither prejudicial nor harmful to the defendant. Although a better practice may have been to delete therefrom immaterial comments by Mrs. Daugherty, we cannot find any references contained therein that would have affected the issues on trial by the admission of the statement in its entirety.

Defendant next suggests that admitting State Exhibit 13 (a fifty-three page excerpt of the defendant's testimony at his certification hearing) was error, since some of this testimony was given while the defendant was under cross-examination by co-principal Jones' attorney.

It has long been recognized that any statements of the defendant relevant to the offense for which he is being tried are admissible. In *Jackson v. State*, 29 Okl.Cr. 429, 234 P. 228 (1925), this Court stated:

The defendant objected to the State proving by the county court reporter certain statements made by the defendant at the preliminary hearing. Upon the admission of this testimony, error is assigned. It is a well-settled rule that any statements of the defendant relevant to the offense for which he is being tried is admissible.

We see no distinction between the testimony presented by defendant at a preliminary hearing, as in *Jackson*, and the testimony

presented by defendant at his certification proceeding in this case. Thus, the admission of State Exhibit 13 was not improper; to the contrary, it was a free and voluntary statement given by the defendant, who chose to waive his right to remain silent.

We also note that the decision of *State ex rel. Blankenship v. Freeman*, 440 P.2d 744 (Okl.1968), which the defendant cites in support of this assigned error, establishes the guidelines for the admission of testimony of a witness in a prior proceeding in a future proceeding, requiring that the testimony *either* was given "at a prior regular trial in the same action or at a former trial or proceeding directed to well-defined issues where the parties and issues were substantially the same..."

The related contention of error, that the transcript (State Exhibit 13) was "incomplete" and should not have been admitted for that reason, is likewise rejected. The excerpt from the transcript of the certification proceeding was reviewed by the court prior to its admission. Thereafter, suggesting inaccuracy due to "incompleteness," the defendant sought to so establish by way of the testimony of another court reporter. Besides coming too late, after the introduction and admission, the court reporter was also asked to establish only that in his opinion there were a number of unavailable responses. He neither had heard the tapes nor could read the notes of the reporter who had taken the certification processing, since the two reporters used different styles.

Title 22 O.S.1971, § 893, provides:

On retiring for deliberation the jury may take with them the written instructions given by the court; the forms of verdict approved by the court, and all papers which have been received as evidence in the cause, except that they shall take copies of such parts of public records or private documents as ought not, in the opinion of the court, to be taken from the person having them in possession.

By statute then, exhibits received in evidence may be taken by the jury on retiring for deliberations subject to the discretion of the trial court. *Henderson v. State*, 490 P.2d 786 (Okl.Cr.1971); *Hopkins v. State*, 9 Okl.Cr. 104, 130 P. 1101 (1913). And, as this Court held in *Keeney v. State*, 53 Okl.Cr. 1, 6 P.2d 833 (1932):

It is not shown that the jury received any extraneous evidence or any exhibit which had not been properly identified and admitted in evidence. The sending of proper exhibits to the jury room instead of having the jury return into court and there delivering the exhibits to them in person is not error. *Brown v. State*, (52 Okl.Cr.App. 307) 4 P.2d 129; *Powell v. State*, 61 Miss. 319. See also *White v. State*, 20 Okl.Cr. [182], 183, 201 P. 522.

In the matter before us, the trial court allowed all the exhibits which had been admitted in evidence, which included State Exhibits 8 and 13, to go to the jury while they deliberated, and we do not find that an abuse of discretion occurred.

In his eighth assignment of error, the defendant argues that the trial court erred in excluding the testimony of two expert witnesses, a psychologist and a psychiatrist whom the defendant wished to call to rebut the issue of mens rea. The defendant fails to cite any authorities in his brief for the proposition that social maturity, hypnotic testing, or truth serum testing have gained the general acceptance in the scientific community required by the decisions of this Court to admit such testimony. In the case of *McKee v. State*, 372 P.2d 243 (Okl.Cr. 1962), this Court held that the trial court properly rejected defendant's offer of expert testimony that she was motivated by mental apprehension of fear in slaying her husband. In the first paragraph of the syllabus of that decision, we stated:

The state of mind of the accused is the proper subject for expert testimony when the defense is based on a plea of insanity at the time of commission of the act, but it is not a proper subject for expert testimony when the defense is not based on a plea of insanity at the time of the commission of the act for which the defendant stands accused.

We further reasoned that:

To allow a psychiatrist to testify on the basis of examinations made more than

thirty (30) days after the slaying as to whether or not the accused acted in necessary self defense, on the basis of facts existing at the time of the slaying, would clearly sanction an invasion of this exclusive province of the jury.

In our decision of *Jones v. State*, 542 P.2d 1316 (Okl.Cr.1975), we stated:

Although the defendant cites numerous decisions from this jurisdiction dealing generally with the admissibility of expert testimony, the precise question of whether expert opinion is admissible in behalf of the accused as to the truthfulness of his exculpatory statements made while in a hypnotic state, presents a novel issue in this state. However, this Court has repeatedly held that the results of lie detector or truth serum tests are inadmissible for the reason that such tests have not attained sufficient scientific and psychological accuracy nor general recognition as being capable of definite or certain interpretation. (citations omitted)

The defendant attempts to suggest that the Evidence Code would allow the admissibility of this testimony. The testimony of the psychiatrist was, in part, to be premised upon the results of testings and examinations which have not gained general acceptance in the courts of this State. The *Jones* decision has not been modified by the enactment of the New Evidence Code, nor does the enactment of the Evidence Code allow what is tantamount to a clear invasion of matters within the exclusive province of the jury.

In his ninth proposition, defendant alleges error due to the trial court's refusal to admit Defense Exhibits 3–16 into evidence. These exhibits, a series of letters written to a girlfriend by co-principal Eric Jones while he was in jail awaiting trial, were irrelevant and were properly denied as evidence in the trial of the defendant. See, 12 O.S. Supp.1980, §§ 2401, 2402. The determination of whether evidence is relevant is a matter addressed to the discretion of the trial court and unless a clear abuse is shown the rulings thereon will not be disturbed. *Bowman v. State*, 585 P.2d 1373 (Okl.Cr. 1978).

In this same connection, the defendant contends that prosecutorial abuse occurred when these same letters were admitted into evidence in the trial of *Jones*. This argument is unpersuasive, since in that case the party on trial had written the letters which would have been admissible against that defendant. There was no prosecutorial abuse in the instant case since the letters sought to be admitted had been written by another party and were clearly inadmissible in defendant's trial.

In addressing the defendant's final contentions of error that deal with the court's instructions or lack thereof, we need only observe that the defendant was tried as an adult, having been appropriately certified to stand trial as such. The assertion that the jury should have been instructed to consider and view the acts of defendant differently because of his age is patently frivolous. As we have stated on many occasions, it is not sufficient to assert error, but authorities must be set forth in support thereof and this Court will not search out authority in support of a defendant's position. See, *Sandefur v. State*, 461 P.2d 954 (Okl.Cr.1966); *Perez v. State*, 614 P.2d 1112 (Okl.Cr.1980).

In addressing the contention that defendant's conviction should be reversed because of a failure of the trial court to give a requested instruction on retreat and abandonment of intent, we need only observe that absent proof of such retreat and abandonment of intent, no such instruction should be given. *Young v. State*, 84 Okl.Cr. 76, 179 P.2d 173 (1947). We note that instruction number seven touched indirectly on the theory of retreat and abandonment of intent paralleling the defendant's theory that he passively went along with the crime and was not actively engaged in its commission. There was no prejudicial error in refusing to give the instruction suggested by defendant, in his exact language, and we are of the opinion that the instruction fairly presented the issue to the jury for proper and appropriate consideration. *Richmond v. State*, 456 P.2d 897 (Okl.Cr.1969).

Although the trial court failed to give the defendant's requested instruction on the impact and effect of character testimony, we are of the opinion that instruction number 16 addressed and covered the subject matter adequately. And, as held in *Pitman v. State*, 487 P.2d 716 (Okl.Cr.1971), the failure to give a requested instruction on' character testimony must be considered in light of the entire record and in view of all the instructions given the jury, and reversible error does not occur unless the failure to give the particular requested instruction deprives the defendant of a substantial right.

The record reveals that the defendant presented the court but one instruction, defendant's requested instruction one, which had been reduced to writing. The substance thereof did not refer to character testimony but to another fact of the case previously considered. Suffice it to say, instructions must be settled after the introduction of evidence is concluded and if counsel for an accused desires additional instructions he or she must reduce such instruction to writing and request that they be given; a conviction will not be reversed where this is not done. In this case, the failure to give an instruction on this point is not reversible error. I would affirm the judgment and sentence.

BRETT, P. J., and CORNISH, J., concur in part and dissent in part.

BRETT, Presiding Judge, concurs in part and dissents in part:

I concur that a conviction should be affirmed, but not for First Degree Murder. Considering the facts of this case, I firmly believe appellant's conviction should be modified to First Degree Manslaughter and that the sentence should be likewise modified.

I also question the validity of the statements made by appellant during the initial interrogation. When he was asked if he wanted to talk, appellant replied, "I guess." During the interrogation appellant's mother asked, "Do you think I should get a lawyer?" These questions cast some doubt on the intelligent waiver of rights. Certainly the mother indicates that she knows little about constitutional rights. The spirit and intent of the statute requiring the presence of a parent or other guardian during the interrogation of a juvenile is to secure the constitutional safeguards of the Due Process Clause of the Constitution. Mechanical compliance with the law does not assure this protection. It is only when the State can show that both the youth and parent intelligently received knowledge of his rights and, knowing those rights, waived them that the results of the interrogation should be admissible at a subsequent hearing or trial. I do not suggest that this is a burden easily assumed. It is and should be one that requires aggressive compliance.

In the instant case, I would hold that the State has not properly shown that the juvenile and his mother intelligently waived the juvenile's rights at his interrogation. One fact *not shown* is that they were given an opportunity to confer in private prior to the interrogation. If it cannot be shown that the assistance of an adult consists of more than mere physical presence and that the adult has provided effective counsel to the juvenile, then the State has not complied with the statute. Of persuasion is the decision of the Colorado Court of Appeals in which the intent of a similar statute was interpreted as requiring parental assistance, "to provide at least some minimal assurance that a child's waiver of his right against self-incrimination is knowingly and intelligently made." *People in the Interest of L. B.*, 33 Colo.App. 1, 513 P.2d 1069, 1070 (1973), cited with approval in *J. T. P. v. State*, 544 P.2d 1270 (Okl.Cr.1975). See also *M. D. G. v. State*, 584 P.2d 1365 (Okl.Cr. 1978). Unless the State properly demonstrates that the rights of this particular juvenile were in fact intelligently waived, any statements elicited from him during the interrogation at the police station following his arrest should be excluded from evidence.

Appellant's fifth, sixth and seventh assignments of error complain of the admission of the certification record at his trial. Ordinarily the statements set forth in the majority opinion would be correct. But in

the instant case we are confronted with 10 O.S.Supp.1980, § 1127(a), which provides:

A record of any child under this act [Juvenile Act], or any evidence given in such cause, shall not in any civil, criminal or other cause or proceeding in any court be lawful or proper evidence against the child for any purpose whatever, *except in subsequent cases against the same child under this act.* [Juvenile Act]. The records of law enforcement officers concerning juveniles shall be maintained separate from records of arrests, and shall not be open to public inspection, or their contents disclosed, except by order of the court.

Therefore, because of the foregoing statute, I believe it was improper to admit any portion of the certification record.

In his fourteenth assignment of error, the appellant argues that it was improper to charge him with Murder in the First Degree because Jones was acquitted of that charge when the jury returned a verdict of guilty of First Degree Manslaughter. Title 22 O.S.1971, §§ 432 and 433, should not apply to this situation. As applied to the present case, those sections provide that both Jones and the appellant are principals in the homicide. However, neither section requires that a specific charge be filed. As in this case, where the principal was impliedly acquitted of a charge, it was manifestly unfair to press that charge against an aider and abetter *whose responsibility in the crime was no greater.* To the extent that *Thomas v. State,* 40 Okl.Cr. 204, 267 P. 1040 (1928), and other cases cited in the majority opinion held otherwise, I would overrule them.

■ Therefore, I respectfully dissent in the majority decision as it affirms appellant's conviction for First Degree Murder and sentences him to life imprisonment. The judgment and sentence in this case shocks my conscience. I would modify the judgment to First Degree Manslaughter and the sentence to ten (10) years' imprisonment, as was imposed on the principal who fired the shot that killed Mr. Witty. However, insofar as Judge Cornish would modi-

fy the judgment of conviction to Second Degree Murder, and because this would more nearly satisfy the requirement of justice, I will concur that the judgment and sentence be modified to Second Degree Murder and to the modification of the sentence to ten (10) years' imprisonment.

CORNISH, Judge, concurs in part and dissents in part:

I concur in the majority opinion that the appellant's conviction should be affirmed. However, this writer believes that the trial court erred in excluding testimony of two medical experts. The appellant attempted to introduce testimony of a psychologist and a neuropsychiatrist to rebut the State's evidence that he acted with malice aforethought.

This Court has held in numerous cases that where a defendant is charged with a crime which requires an element of specific intent, he may rebut or explain his intent and mental purpose required to constitute the offense. The defendant must be permitted to present evidence to disprove his felonious intent. *Ryans v. State,* 420 P.2d 556 (Okl.Cr.1966); *Cawley v. State,* 96 Okl.Cr. 53, 248 P.2d 273 (1952); *Smith v. State,* 38 Okl.Cr. 416, 262 P. 507 (1927); *see also Carter v. State,* 376 P.2d 351 (Okl.Cr. 1962).

In this case, the appellant was charged under Title 21 O.S.Supp.1980, § 701.7, which provides that:

A person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

The critical issue before the jury was whether Daugherty acted with malice aforethought. The State had the burden of proving that Daugherty possessed a deliberate intention to kill his victim. The State sought to fulfill this burden of proof through circumstantial evidence of the appellant's conduct. On the other hand, I

believe that the appellant had the right to introduce relevant evidence to rebut the State's evidence that he acted with malice aforethought.

The appellant offered into evidence the testimony of Doctor Ferguson, a licensed psychologist, and Doctor Prosser, a neuropsychiatry specialist. These doctors are eminently qualified and honored in their respective fields of expertise. They both testified that they had performed extensive psychological tests with the appellant. Neither of the experts was allowed to fully testify about the test results or their medical conclusions based upon their personal examinations.

After the trial court sustained the State's objection that the testimony was "incompetent, irrelevant and immaterial" the appellant made an offer of proof. The appellant proffered testimony that the two expert medical witnesses would testify to the following:

(1) Daugherty's emotional stability and his intellectual abilities;

(2) His capacity to distinguish between right and wrong on certain issues;

(3) His level of social maturity and its effect on his ability to reason and make judgments;

(4) That statements elicited from Daugherty in his medical history were consistent with statements he had given on four prior occasions;

(5) Lastly, Dr. Prosser would testify about his test results using hypnosis and truth serum.

In regard to the hypnotic and truth serum tests the appellant concedes that a single test using hypnosis or truth serum would be inadmissible. However, he argues that these tests given in conjunction with the other psychiatric tests, personal observations, and in collaboration with other medical experts, were admissible under the rationale stated in *Brown v. State*, 304 P.2d 361 (Okl.Cr.1956). I agree.

This writer is of the opinion that the trial court erred in ruling that the testimony of Drs. Prosser and Ferguson invaded the province of the jury. I find that in a first degree murder prosecution evidence regarding the relationships between the parties, the state of mind of the parties, the accused's mental ability and social maturity, and the accused's consistent statements were all relevant on the issue of intent. The exclusion of this testimony deprived the appellant of a viable defense on the issue of malice.

In *Carter v. State*, 376 P.2d 351 (Okl.Cr. 1962), this Court addressed a similar situation. In *Carter* the defendant was convicted of first degree manslaughter. The jury found that the defendant caused the death of his mother, while driving under the influence of alcohol. At trial, the defendant attempted to introduce expert medical testimony to establish that he had a history of blackouts as a result of a prior head injury. This Court held that the expert testimony was relevant and admissible on the issue of the defendant's mens rea. It was error for the trial court in *Carter* to exclude the medical testimony. Since a person unconscious at the time of the alleged criminal act may or may not be guilty of first degree manslaughter.

The Court in *Carter v. State, supra,* stated that:

"In a criminal prosecution, any legal evidence from which the jury may adduce guilt or innocence is admissible if, when taken with other evidence in the case, its relevancy appears, and the rejection of competent testimony offered by defendant constitutes prejudicial error." (Quoting *MacLaurin v. State*, 34 Okl.Cr. 324, 246 P. 669 (1926).

■ The exclusion of the expert medical testimony deprived Daugherty of a viable defense. It was evidence that should have gone to the jury to assist them in their determination of whether he acted with malice aforethought. Because of the trial court's exclusion of this evidence I cannot concur in the affirmance of the first degree murder conviction. I would reduce the judgment to second degree murder, which does not require the jury to find that the defendant acted with malice. The record

amply supports such a conviction and I would modify the sentence to ten (10) years' imprisonment.

I also find it necessary to comment on the separate opinion filed by Judge Brett in which he concurs in part and dissents in part.

First, it is argued that the State has not adequately shown that the appellant's statements were voluntarily and intelligently obtained by the police. The record is clear that the appellant's mother was present during the entire interrogation. Investigator Mayo fully explained to both the appellant and his mother their constitutional rights. Both acknowledged that they understood their constitutional rights prior to the appellant making any statements. Additionally, both were advised as to the nature of the interrogation before any questioning commenced. I find that the State has shown that Daugherty and his mother intelligently waived their rights prior to the interrogation. To require the State to carry any greater burden would unreasonably hamper legitimate procedures used by law enforcement officials in carrying out their duties.

It is also proposed that this Court overrule *Thomas v. State*, 40 Okl.Cr. 204, 267 P. 1040 (1928). Judge Brett argues that "where the principal was impliedly acquitted of a charge, it was manifestly unfair to press that charge against an aider and abetter whose responsibility in the crime was not greater." This writer is unaware of any legal authority to support this proposed pronouncement of law. Knowing no authority, I would not disturb *Thomas v. State, supra.*

In *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court upheld the validity of a federal statute which mandated that one who aids or abets in the commission of a crime is punishable as a principal. The *Standefer* Court stated that the "statute 'abolished the distinction between principals and accessories and [made] them all principals' ... Read against its common-law

background, the provision evinces a clear intent to permit the conviction of accessories to federal criminal offenses *despite the prior acquittal of the actual perpetrator of the offense.*" [Emphasis added.] The Court concluded:

> In denying preclusive effect to Niederberger's acquittal, we do not deviate from the sound teaching that 'justice must satisfy the appearance of justice.' This case does no more than manifest the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.' While symmetry of results may be intellectually satisfying, it is not required. [Citations omitted.]